**In re Richard LAMANNA, Debtor.**

**FIRST USA, et al., Appellees,**

v.

**Richard LAMANNA, Appellant.**

No. 98–9003.

United States Court of Appeals,
First Circuit.

Heard July 27, 1998.

Decided Aug. 25, 1998.

Peter G. Berman, with whom Raskin & Berman was on brief, for appellant.

Eric Kempton Bradford, Office of the United States Trustee, with whom Paul W. Bridenhagen, Executive Office for United States Trustees, was on brief, for amicus curiae J. Christopher Marshall, United States Trustee.

Before BOUDIN, Circuit Judge, WELLFORD,* Senior Circuit Judge, and LYNCH, Circuit Judge.

LYNCH, Circuit Judge.

The question presented is the meaning of "substantial abuse" under § 707(b) of the Bankruptcy Code and the criteria by which it is measured. This is a question of first instance in this circuit. A Chapter 7 bankruptcy petition of an individual debtor whose debts are primarily consumer debts may be dismissed if the court finds that granting relief would be a "substantial abuse" of the Chapter. See 11 U.S.C. § 707(b).

Richard Lamanna sought relief from approximately $15,000 of primarily consumer debt by filing for bankruptcy under Chapter 7. The bankruptcy court sua sponte dismissed Lamanna's petition as a "substantial abuse" of Chapter 7 based on the finding that Lamanna had sufficient disposable income to pay off his debts under a Chapter 13

* Of the Sixth Circuit Court of Appeals, sitting by    designation.

payment schedule. The Bankruptcy Appellate Panel (BAP) affirmed for the same reason.

On appeal, Lamanna argues that the BAP misconstrued § 707(b) as meaning that "substantial abuse" automatically exists where a debtor's income exceeds his expenses even minimally. Lamanna says that his expenses are artificially low because he has avoided normal expenses by living with his parents, and that it cannot constitute "substantial abuse" of the bankruptcy system for a debtor to live with parents who subsidize his needs. Lamanna also says that "substantial abuse" under § 707(b) refers only to acts of bad faith, and that there is no evidence of bad faith.

As amicus curiae, the United States Trustee argues that the court did not apply a per se future income test. He emphasizes that Lamanna's schedules show that he can repay 100% of his debts out of future disposable income and that, despite ample opportunity, Lamanna presented no evidence of countervailing factors which militated against dismissal. The Trustee invites this court to adopt the "totality of circumstances" test, employed by both the bankruptcy court and BAP, as the law of this circuit.

We adopt the "totality of the circumstances" test as the measure of "substantial abuse" under § 707(b) of the Bankruptcy Code. In doing so, we join the Fourth, Sixth, Eighth and Ninth Circuits in holding that a consumer debtor's ability to repay his debts

out of future disposable is not per se "substantial abuse" mandating dismissal. At the same time, we do not require a court to look beyond the debtor's ability to repay if that factor warrants the result. We explicitly reject the notion that "substantial abuse" refers only to bad faith acts, although a court may consider a debtor's bad faith acts in making its decision. Applying this test, we find that the BAP correctly decided that allowing Lamanna's petition would constitute a "substantial abuse" of Chapter 7, and affirm.

## I.

Richard Lamanna, a Rhode Island resident, filed for bankruptcy under Chapter 7 on February 18, 1997.[1] Lamanna's schedules (Schedules F, I & J), filed with his voluntary petition, show that he has total unsecured debt of $15,911.96 which is primarily consumer debt,[2] his monthly income is $1,350.96, and his monthly expenses are $580. Lamanna's income therefore exceeds his expenses by $770.96 per month, the amount of his disposable income.[3]

On February 24, 1997, the bankruptcy court sua sponte ordered Lamanna to show cause why his petition should not be dismissed as a "substantial abuse" of Chapter 7 under 11 U.S.C. § 707(b).[4] In the show cause order, the court noted that Lamanna's schedules showed that he was capable of

1. Lamanna signed and dated his petition, along with his schedules, on November 22, 1996. During the four week period immediately prior to signing the documents, he charged $9,994.45 on credit cards and personal credit lines. This amounts to 63% of Lamanna's total debt. The Trustee suggests that this may be evidence of bad faith on Lamanna's part. We decline to decide that issue. The BAP did not make a finding regarding bad faith in deciding the case, and relied entirely on analysis of Lamanna's ability to repay.

2. The Bankruptcy Code defines "consumer debt" as "debt incurred by an individual primarily for a personal, family, or household purpose." 11 U.S.C. § 101(8). The term "primarily" refers to "an overall ratio of consumer to nonconsumer debts of over fifty percent," and "the consumer debts should be evaluated not only by amount,

but by their relative number." *In re Booth*, 858 F.2d 1051, 1055 (5th Cir.1988).

3. "Disposable income" is defined as income "not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor." 11 U.S.C. § 1325(b)(2).

4. 11 U.S.C. § 707(b) provides:

After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor.

paying 100% of his debts over three years under a Chapter 13 payment plan.[5]

At the show-cause hearing, Lamanna argued that his expenses were artificially low because he was living with his parents. Without that subsidy, he said, he could not limit his expenses to $580 per month and would thus have no disposable income with which to pay his debts. Yet Lamanna acknowledged that his scheduled expenses and income were accurate and that he did not anticipate a change in living circumstances, i.e., moving out of his parents' house, that would precipitate a rise in living expenses.

The bankruptcy court, applying the "totality of the circumstances" test, found "substantial abuse" and dismissed the case. The BAP affirmed on the same grounds. Lamanna appeals.

## II.

The question of whether allowing Lamanna's bankruptcy petition would constitute "substantial abuse" of Chapter 7 under § 707(b) contains two components: first, the proper test by which "substantial abuse" is measured; second, whether, applying that test, the BAP correctly decided the issue. The facts are undisputed, and we review de novo the BAP's conclusions of law. *See In re Healthco Int'l, Inc.*, 132 F.3d 104, 107 (1st Cir.1997).

### A. *The "totality of the circumstances" test*

Although "substantial abuse" is not self-defining, the history and policies underlying § 707(b) give content to its meaning and purpose. That history is well set out in previous opinions. *See In re Green*, 934 F.2d 568, 570 (4th Cir.1991); *In re Krohn*, 886 F.2d 123, 125–26 (6th Cir.1989); *In re Wal-*

ton, 866 F.2d 981, 983 (8th Cir.1989); *In re Kelly*, 841 F.2d 908, 914 (9th Cir.1988). We summarize the pertinent points.

Section 707(b) was added to the Bankruptcy Code as part of the Bankruptcy Amendments and Federal Judgeship Act of 1984. *See* Pub.L. 98–353, 98 Stat. 333, 355 (1984) (codified in various sections of 11 U.S.C. and 28 U.S.C.) (the "1984 Act"). It authorizes a bankruptcy court, either sua sponte or on the motion of the United States Trustee, to dismiss the Chapter 7 petition of an individual debtor who owes primarily consumer debts where allowing the petition would be a "substantial abuse" of Chapter 7. Congress chose neither to define "substantial abuse" in the 1984 Act nor to leave specific guidance in legislative history.[6] Congress thus left a flexible standard enabling courts to address each petition on its own merit.

The primary impetus for the enactment of § 707(b) was the credit industry's unhappiness with the fact that consumer debtors who were able to repay their debts had increasingly been filing for bankruptcy relief since the enactment of the 1978 Bankruptcy Act. "Prior to 1984, debtors enjoyed a virtually unfettered right to a 'fresh start' under Chapter 7, in exchange for liquidating their nonexempt assets for the benefit of their creditors." *Green*, 934 F.2d at 570. Section 707(b) was enacted to impose a restraint on consumer debtors' access to Chapter 7 discharge by interposing bankruptcy courts as gatekeepers who could examine the worthiness of debtor petitions and dismiss those petitions deemed abusive. *See id.* As the *Walton* court summarized, § 707(b) was "aimed primarily at stemming the use of Chapter 7 by unneedy debtors." *Walton*, 866 F.2d at 983; *see also* Wayne R. Wells, Janell M. Kurtz & Robert J. Calhoun, *The*

---

5. Lamanna could pay his debt over three years by making monthly payments of $491.10 to the Chapter 13 trustee. Lamanna could also pay his debt over five years by making monthly payments of $294.66.

6. There is no Senate Report or House Report on the final version of the 1984 Act, only statements by individual senators on their view of the Act's meaning and purpose. *See* Statements by Legislative Leaders, *reprinted in* 1984 U.S.C.C.A.N. 576. There is, however, a Senate Report on an

early draft of the 1984 Act, S. 445, 98th Cong., 1st Sess. (1983), which may offer insight into Congress' intent in enacting § 707(b). *See* S.Rep. No. 65, 98th Cong., 1st Sess. (1983). This report warns that "the number of consumer bankruptcy cases filed each year has risen dramatically" since enactment of the 1978 Bankruptcy Act. *Id.* at 3. It states that "if a debtor can meet his debts without difficulty as they come due, use of Chapter 7 would represent a substantial abuse." *Id.* at 54.

*Implementation of Bankruptcy Code Section 707(b): The Law and the Reality,* 39 Clev. St. L.Rev. 15, 28 (1991) ("In enacting section 707(b), one concern was consumer debtors with the ability to repay their debts were unfairly taking advantage of bankruptcy to obtain a discharge of indebtedness."). "Substantial abuse" thus attempts to moderate the tension between "uphold[ing] creditors' interests in obtaining repayment where such repayment would not be a burden," *Kelly,* 841 F.2d at 914, and maintaining the ability of worthy debtors to gain access to Chapter 7's substantial protections. Section 707(b)'s ambiguity is inherent in its function as a guide to equitable discretion.

With "substantial abuse" lacking specific meaning, it has fallen to the courts to determine how "substantial abuse" ought to be measured. Although tests employed by various courts of appeals do not employ precisely the same language, they share common elements. First and foremost, it is agreed that a consumer debtor's ability to repay his debts out of future disposable income is strong evidence of "substantial abuse". *See Green,* 934 F.2d at 572; *Krohn,* 886 F.2d at 126; *Walton,* 866 F.2d at 985; *Kelly,* 841 F.2d at 914–15; *see also* 6 Lawrence P. King, *Collier on Bankruptcy* ¶ 707.04[4], at 720 (15th ed. rev.1998) ("The primary factor that may indicate a substantial abuse is the ability of the debtor to repay the debts out of future disposable income."). *Kelly* and *Walton* focus primarily upon ability to repay, while *Green* and *Krohn* emphasize the need to consider the "totality of the circumstances." *Krohn* offers this test:

> In determining whether to apply § 707(b) to an individual debtor, . . . a court should ascertain from the totality of the circumstances whether he is merely seeking an advantage over his creditors, or is "honest," in the sense that his relationship with his creditors has been marked by essentially honorable and undeceptive dealings, and whether he is "needy" in the sense that his financial predicament warrants the discharge of his debts in exchange for liquidation of his assets. Substantial abuse can be predicated upon either lack of honesty or want of need.
>
> . . .
>
> Among the factors to be considered in deciding whether a debtor is needy is his ability to repay his debts out of future earnings. That factor alone may be sufficient to warrant dismissal. For example, a court would not be justified in concluding that a debtor is needy and worthy of discharge, where his disposable income permits liquidation of his consumer debts with relative ease. Other factors relevant to need include whether the debtor enjoys a stable source of future income, whether he is eligible for adjustments of his debts through Chapter 13 of the Bankruptcy Code, whether there are state remedies with the potential to ease his financial predicament, the degree of relief obtainable through private negotiations, and whether his expenses can be reduced significantly without depriving him of adequate food, clothing, shelter and other necessities.

*Krohn,* 886 F.2d at 126–27 (citations omitted). As described by *Krohn,* the "totality of the circumstances" test demands a comprehensive review of the debtor's current and potential financial situation.[7]

We adopt the "totality of the circumstances" test largely as it is described in *Krohn.* In so doing, we reject any per se rules mandating dismissal for "substantial abuse" whenever the debtor is able to repay his debt out of future disposable income, or forbidding dismissal on that basis alone.[8] Such strict interpretations cannot be squared

---

7. The "totality of the circumstances" test has been adopted by several bankruptcy courts within this circuit. *See, e.g., In re Haffner,* 198 B.R. 646, 648 (Bankr.D.R.I.1996); *In re Mastromarino,* 197 B.R. 171, 176–77 (Bankr.D.Me.1996); *In re Snow,* 185 B.R. 397, 401–03 (Bankr.D.Mass. 1995). These courts share the *Krohn* view that a debtor's ability to fund a Chapter 13 plan out of future disposable income is the primary, but not conclusive, factor to be considered in determining whether granting relief would constitute "substantial abuse."

8. For example, a debtor may have such an overwhelming ability to repay that that fact alone may warrant a conclusion of "substantial abuse." *But see Green,* 934 F.2d at 572 (stating that ability to pay is insufficient, without more, for "substantial abuse" finding).

with the open-textured nature of § 707(b) and are inconsistent with § 707(b)'s purpose of guiding, not constraining, bankruptcy courts in the exercise of their equitable discretion. We hold that a bankruptcy court may, but is not required to, find "substantial abuse" if the debtor has an ability to repay, in light of all of the circumstances.[9]

In sum, in assessing the totality of a debtor's circumstances, courts should regard the debtor's ability to repay out of future disposable income as the primary, but not necessarily conclusive, factor of "substantial abuse." The factors recited in *Krohn* should be regarded as a nonexclusive list of relevant considerations.

B. *Application of the Standard*

■ Applying the "totality of the circumstances" test to Lamanna's case results in affirmance of the dismissal of his Chapter 7 petition for "substantial abuse." Lamanna's schedules showed that he has sufficient disposable income to repay his debts under a Chapter 13 repayment plan in three to five years. There is no evidence that Lamanna's living situation was unstable or likely to change in the near future. There is no evidence of other factors that cast doubt on the stability of Lamanna's future income and expenses. Although Lamanna's expenses are particularly low because he lives with his parents, this state of affairs, as the BAP noted, "is not artificial; it is actual." The court properly based its decision on the current and foreseeable facts. If Lamanna's circumstances dramatically change, he is free to seek relief anew.

Lamanna's argument that the court penalized him for living with his parents (and thus having exceptionally low monthly expenses) boils down to the notion that § 707 requires the bankruptcy court to impute a minimum cost of living to a debtor and then measure the debtor's actual income against the higher of the imputed minimum and the debtor's actual expenses. Section 707 does not contain such an implicit requirement, and this court will not write such a requirement into the statute.

Finally, we reject Lamanna's argument that the court imposed a "mechanically applied future income test" in determining that allowing Lamanna's petition would constitute "substantial abuse" of Chapter 7. The BAP's decision was not mechanical; it was simply uncomplicated.

### III.

We adopt the "totality of the circumstances" test as the measure of "substantial abuse" under § 707(b) in this circuit. Applying this test, we hold that the court correctly decided to dismiss Lamanna's Chapter 7 petition. The decision is *affirmed.* Costs are awarded to the United States Trustee.

---

9. Lamanna cites to a case from the bankruptcy court for the District of New Hampshire, *In re Keniston,* 85 B.R. 202 (Bankr.D.N.H.1988), for the proposition that "substantial abuse" refers strictly to bad faith acts. There is no evidence of bad faith in this case, he says, hence there is no "substantial abuse" warranting dismissal. In *Keniston,* the court sought to avoid an analysis of the constitutionality of § 707(b) under the Equal Protection Clause by interpreting § 707(b) to provide an additional check on "bad faith" filings under § 105(a). This interpretation of § 707(b) was specifically rejected in *Snow* and *Haffner,* and is not followed by any bankruptcy court in this circuit. We also reject *Keniston*'s analysis. As stated above, we regard bad faith as part of, but by no means the entirety of, the "substantial abuse" calculation.