**In re Paul G. STAUB, Debtor.**

**United States Trustee, Movant,**

v.

**Paul G. Staub, Respondent.**

**No. 1–99–01818.**

United States Bankruptcy Court,
M.D. Pennsylvania.

Oct. 11, 2000.

Gregory Lyons, for Movant.

Norman M. Yoffe, Camp Hill, PA, for Respondent.

Lawrence G. Frank, Harrisburg, PA, trustee.

## MEMORANDUM

ROBERT J. WOODSIDE, Chief Judge.

### Procedural History

On April 26, 1999, Paul G. Staub (Debtor) filed a Petition in Chapter 7. His reported net monthly expenses ($1,726.00) exceeded his net monthly income ($1,458.00) by some $268.00. His reported unsecured debts totaled $14,100.00. Debtor's expenses included a payment of $900.00 per month on account of the post-secondary education of two children. Without this expense, Debtor would have over $600.00 per month with which to fund a Chapter 13 Debt Adjustment Plan if he chose to convert his case to that Chapter. In a standard thirty-six month Plan, Debtor could pay off 100% of his unsecured debt by making payments of only some $392.00 per month.

In response to questioning by the Chapter 7 trustee, Debtor filed amended schedules to disclose the income and expenses of his non-debtor spouse. Her reported net monthly income and expenses are $27,384.00 and $11,368.00 respectively. A fraction of her income is used to compensate for Debtor's monthly deficit.

On October 12, 1999, the U.S. Trustee filed the instant motion pursuant to 11 U.S.C. § 707(b) to dismiss Debtor's case. The U.S. Trustee noted the easy ability and apparent willingness of Debtor's spouse to assume Debtor's personal living expenses, which would allow him to apply his income to his debts. The U.S. Trustee alleged that Debtor's payment of $900.00

per month for his child's[1] educational expenses was unreasonable and unnecessary.

In response, Debtor argued that to require his new spouse to pay his living expenses would be to effectively require her to repay his debts. Debtor then pointed out that all of his scheduled debts were premarital and/or related to the educational expenses of his children from a prior marriage. Debtor acknowledged that his current spouse had more than sufficient income to satisfy his debts. He argued, however, that it was improper to consider her income because she had no legal obligation to assist in payment of his premarital debts.

These matters were heard on March 7, 2000. They are now ready for decision. I have jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334. This matter is core pursuant to 28 U.S.C. § 157(b)(2)(J).

### *Discussion*

Section 707(b) of the Bankruptcy Code provides that:

> [T]he court ... may dismiss a [Chapter 7] case ... if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor.

11 U.S.C. § 707(b).

■ As the parties are well aware, the Bankruptcy Code does not explain what it might mean to "substantially abuse" Chapter 7, and so the courts have attempted to define it. Their definitions have varied. I have followed the decisions

which assert that the concept of "substantial abuse" cannot be defined in a phrase or two, but that we can only determine if Chapter 7 is being abused if we examine the "totality of the circumstances"[2] of each case. *In re Green,* 934 F.2d 568, 572 (4th Cir.1991); *In re Walton,* 866 F.2d 981, 983–84 (8th Cir.1989); *In re Gavita,* 177 B.R. 43, 47 (Bankr.W.D.Pa.1994); *In re Bacco,* 160 B.R. 283, 288 (Bankr.W.D.Pa. 1993).

■ Many courts applying a "totality of circumstances" test have held that if a debtor does not "need" a Chapter 7 discharge, then it might fairly be said that his getting one anyway would be a "substantial abuse". *See, Bacco,* at 288; *In re Krohn,* 886 F.2d 123 (6th Cir.1989); *In re Rubio,* 249 B.R. 689 (Bankr.N.D.Tex.2000). I agree with those courts as well. *See, In re Lacrosse,* 244 B.R. 583 (Bankr.M.D.Pa. 1999). But deciding whether a debtor "needs" a Chapter 7 discharge is not as simple as it might appear.

It would be tempting to say that any debtor who can afford to repay all his debts does not "need" a discharge. But to do so would be to ignore many practical questions: Can a debtor "afford" to repay his debts if it means he must reduce his expenses to subsistence levels or less, or if it means he must be working multiple jobs or extreme amounts of overtime? Probably not; even those cases which require a debtor to show that he "needs" a discharge do not generally require such heroic efforts at repayment. But what about a debtor who has minimal personal income but can have all of his expenses easily paid

---

1. Debtor's original schedules indicated that he was paying the educational expenses of two children. However, as of the date of the hearing, one of those children had graduated college, so the expenses of only one remained. Debtor testified, however, that he had underestimated, in his original schedules, the amount he had been paying, and that in fact he was still paying $900.00 per month for just one child.

2. The following factors are generally considered when applying the a totality of circumstances analysis:

(1) whether the bankruptcy petition was filed because of sudden illness, calamity, disability, or unemployment;

(2) whether debtor made consumer purchases far in excess of his ability to repay;

(3) whether debtor's proposed family budget is excessive or unreasonable;

(4) whether debtor's schedules and statements of current income and expenditures reasonably and accurately reflect debtor's true financial condition; and

(5) whether the bankruptcy petition was filed in bad faith.

*Green* at 572.

by a non-debtor third party, such as a spouse; Should that spouse be required to bear the total weight of the debtor's expenses so that his minimal income may be devoted to his debts when the spouse had nothing to do with incurring the debts in the first place? Here the question of whether such a debtor "needs" a discharge is a much closer one.

Closer questions require closer scrutiny of the facts which engender them. Thus, before asking whether a debtor "needs" a discharge we must ask what he is getting in the discharge; deciding whether one "needs" something necessarily depends on what it is that one is getting. At some level, anyone who wishes to apply current income to something other than pre-existing debt "needs" a discharge of that debt. Bankruptcy was obviously intended, and the Code was obviously written, for greater "needs" than that. So to fully answer the question of whether one "needs" a discharge, one must first determine what the ultimate intent or purpose of bankruptcy is.

■ The Supreme Court long ago pronounced that the primary intent of a bankruptcy liquidation and discharge is to provide "the honest but unfortunate debtor ... a new opportunity in life and *a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt."* *Local Loan Co. v. Hunt,* 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934) (emphasis added). This pronouncement of the meaning of a "fresh start" has become the anthem of bankruptcy.

Thus, if "substantial abuse" means that a debtor does not "need" a Chapter 7 discharge and if the purpose of a Chapter 7 discharge is to give a debtor a fresh start, and if a "fresh start" means a clear field for future effort without the burden of insurmountable debt, then substantial abuse may be found whenever a petitioning debtor does not in fact need a clear field for future effort unhampered by the pressure of pre-existing debt.

■ "A vast majority of both courts and commentators have opined that a debtor's ability to pay is the sine qua non of section 707(b)". *In re Attanasio,* 218 B.R. 180 (Bankr.N.D.Ala.1998). In other words, the essential element in a 707(b) case is proof that the debtor is able to pay his debts. Such ability obviously depends on the amount of the debtor's income and his expenses.

■ I have previously held, as most courts, that in determining a debtor's income for Section 707(b) purposes, a court must consider the income and expenses of both the debtor and a non-debtor spouse. *In re Bernstein,* Case No. 1–96–01708 (Memorandum Opinion 10/9/97); *see also, In re Bicsak,* 207 B.R. 657 (Bankr. W.D.Mo.1997); *In re Wilkinson,* 168 B.R. 626, (Bankr.N.D.Ohio 1994); *In re Smith,* 157 B.R. 348 (Bankr.N.D.Ohio 1993); *Matter of Strong,* 84 B.R. 541, 543 (Bankr. N.D.Ind.1988). In the instant matter, however, Debtor points out, without dispute, that all the debt he seeks to discharge was incurred by him alone before his current marriage, and that the child whose college expenses substantially prevent him from repaying his scheduled debts is not the child of his current spouse. He argues, then, that it would be unjust to require his spouse to shoulder his current expenditures for himself and his child so that he might repay debts from which she received no benefit. He further argues that his divorce decree requires him to support this child through college. This latter argument is easily dismissed.

The fact of the matter is that Debtor is not compelled by judicial order to pay $900.00 per month to his son. There is no specific dollar sum and there is no penalty for failure to pay. Rather, Debtor merely testified as follows: "I think the divorce statement many years ago may have— there was a clause in there saying that we would do all that we could to get them through college, depending on the circumstances." (N.T. 7). Debtor also stated that he felt morally obligated to support his son. This "obligation" is in no way a support obligation rendered non-dischargeable under 11 U.S.C. § 523(a)(5).

Further, the courts generally agree that educational expenses for adult children are discretionary, and are not expenses that should be foisted upon a debtor's pre-petition creditors. *See, In re Stallman*, 198 B.R. 491 (Bankr.W.D.Mich.1996) (granting § 707(b) motion against debtor whose schedules included several hundred dollars per month expended for college education of disabled but emancipated son. "The court is convinced [that debtor's son's] college education should not be wholly financed by the Debtor's creditors, especially when no compelling reason to do so has been produced other than that such expenditures are the Debtor's personal choice.") *See also, In re McNulty*, 142 B.R. 106 (Bankr.D.N.J.1992); *In re Goodson*, 130 B.R. 897 (Bankr.N.D.Okla.1991) ($750.00 monthly to the post-secondary education of debtor's children not necessary; "[a] debtor does not have the right to force his creditors to donate to his children's education.")

I agree with *Stallman, McNulty,* and *Goodson* and find that the instant Debtor's creditors should not be required to bear a burden which truly is Debtor's alone.

 Next I turn to Debtor's argument that his new wife should not be required to repay his creditors, or to wholly support him while he himself repays them.

The *Attanasio* Court expressed its concerns about its ability to decide, in anything but an arbitrary way, how much a non-debtor spouse's income should "count" toward a debtor's income. In some § 707(b) cases, I have had similar concerns. However, in this case, Debtor misapplies the point of the concern. That is, he argues that to deny him a discharge would be to compel his new spouse to support him, which would be the same as compelling her to repay his premarital debt. In fact, that is not the case. She is not being ordered to do anything. As the Court in *In re Berndt*, 127 B.R. 222 (Bankr.D.N.D.1991) observed:

> In calculating whether there is discretionary income available … one must,

of necessity, observe to what degree a debtor's daily living expenses are shared as co-obligations of the non-debtor spouse or are assumed completely by that spouse …. To be clear, the non-debtor spouse's income is not being rendered liable for the debts of the Debtor but rather is simply being considered in determining whether the Debtor himself has available discretionary income by virtue of the fact that he and the non-debtor spouse share a joint household. *Id.,* at 225.

I cannot simply ignore, as Debtor would have me do, the fact that he is married to a spouse whose disposable income is so great that it could pay off the entirety of his unsecured debt in a matter of months.

This fact necessarily returns us to the question of the Debtor's "need" of a fresh start "unhampered by the pressure and discouragement of pre-existing debt." *Local Loan, supra.*

The Debtor does not live in poverty. He does not complain of harassment from creditors threatening his peace of mind about his future. He does not appear to see his future as one of involuntary servitude. His bankruptcy petition was not filed because of sudden illness, calamity, disability, or unemployment. His expenses include an unreasonable amount for his adult son's education. Debtor's schedule of expenditures was somewhat inflated and did not accurately reflect his true financial condition. (N.T. 17—22). Thus, under *Local Loan* and *Green, supra,* he is not truly in "need" of a fresh start, unburdened by his former debts, and the totality of circumstances indicates that to grant him a discharge would be to substantially abuse Chapter 7.

The dismissal of Debtor's case is equally justifiable by the plain fact that Debtor could pay off 100% of his unsecured debt if he were to voluntarily convert his case to one in Chapter 13 and devote the funds from his voluntary donation to his son's college education to his debts. Even without a conversion to Chapter 13, Debtor could pay off all his debts in little over a

year ($14,100.00 ÷ $900.00 per month = 15.56 months plus additional time for accumulating interest).

For these reasons, the U.S. Trustee's motion will be granted. An appropriate order will follow.