### In re Howard R. BEHARRY, Debtor.

### No. 99–22269–BM.

United States Bankruptcy Court, W.D. Pennsylvania.

July 18, 2001.

Dennis J. Spyra, Pittsburgh, PA, for Debtor.

### MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Before the court is a Rule To Show Cause pursuant to 11 U.S.C. § 707(b) to dismiss debtor's chapter 7 case as a substantial abuse of the provisions of chapter 7 of the Bankruptcy Code. Debtor originally filed this case under chapter 13 and thereafter requested that it be converted to a chapter 7 proceeding.

Debtor vigorously denies that granting him a discharge would result in such a substantial abuse. In support of his position, debtor filed amended schedules of his present monthly income and expenditures, which purportedly show that he lacks sufficient surplus monthly income with which to repay his creditors a significant portion of what they are owed. These schedules are at variance with the schedules he filed at Bankruptcy No. 97–21965BM, which case was dismissed as a substantial abuse of the bankruptcy system. At trial, he again orally amended his budget so as to guarantee that his spending exceeded his net income.

We conclude for reasons set forth below that substantial abuse of the provisions of chapter 7 would result if debtor were granted a discharge and therefore will dismiss his case in accordance with § 707(b).

— FACTS —

This is not the first time we have visited this matter with respect to debtor Howard Beharry. Debtor and his then-wife, from whom he is now divorced, had filed a voluntary chapter 7 petition in March of 1997 at Bankruptcy No. 97–21965–BM. Upon motion by the United States trustee, we issued an order on November 5, 1997, directing debtors to request conversion of their case to a chapter 13 proceeding within twenty days and to submit a good faith chapter 13 plan that proposed making a substantial distribution to their unsecured creditors. Their case was to be dismissed if debtors failed to do so within twenty days. Debtors did not appeal the order. The case ultimately was dismissed when debtors failed to comply with the order.

We concluded in the memorandum opinion accompanying the order of November 5, 1997, that granting debtors a discharge would result in a substantial abuse of the provisions of chapter 7 because debtors were not truly in need of such relief. Their bankruptcy schedules, we concluded, did not accurately indicate debtors' monthly net income and expenses because they had grossly understated the former and had grossly overstated the latter. After reviewing the totality of their circumstances, we concluded that debtors had available at least $1,600 in surplus monthly income, perhaps considerably more, which they could utilize to make substantial payment to their pre-petition general unsecured creditors.

Debtor has been a special education teacher for twenty-seven years. His present annual gross income is $60,000. Although debtor works only approximately 180 days per year, he avers he has no outside income.

On March 30, 1999, debtor filed a voluntary chapter 13 petition. The schedules accompanying the petition, which debtor had signed under penalty of perjury, listed assets with a total declared value of approximately $76,000 and liabilities approximating $207,000. His general unsecured debt approximated $140,000, some $40,000 more than was listed in the previous bankruptcy case. The remainder of the debt listed on the schedules was secured.

On Schedule I, Current Income, debtor indicated that he elected to take his annual salary over twelve months rather than nine or ten and, as a result, his monthly gross income was $4,996; that his total payroll deductions amounted to $2,117.47; and that his monthly net pay was $2,878.53. Included among his payroll deductions were payroll taxes and Social Security in the amount of $1,568.62; insurance in the amount of $226.80; union dues in the amount of $59.90; and an unspecified entry for "other" in the amount of $262.25. On Schedule J, Current Expenditures, debtor listed monthly expenses totaling $2,333. Suffice it to say that compared to other budgets of debtors in bankruptcy, this debtor's lifestyle is not spartan.

A comparison of debtor's purported monthly net income ($2,878.53) as indicated on Schedule I and his purported monthly expenditures ($2,333) as listed on Schedule J indicated surplus monthly income in the amount of $545.53 ($2,878.53 − $2,333 = $545.53).

Debtor's chapter 13 plan, which was confirmed on July 29, 1999, proposed, among other things, a 26.54% distribution to pre-petition general unsecured creditors over a 60–month period. Payments were made to

debtor's pre-petition creditors for a period of time in accordance with the provisions of the confirmed plan.

Debtor married for a second time on January 1, 2001. The marriage unfortunately was of short duration, however, as debtor initiated a divorce proceeding against his second wife in March of 2001. They are now separated, with each living in a residence owned by that individual prior to their marriage. Even though they are separated and there is no court order compelling him to do so, debtor avers that he provides support for her and her child from a previous marriage. He provided no written proof of said payments at trial.

Debtor brought a motion on March 6, 2001, to convert his chapter 13 case to a chapter 7 proceeding. An order converting the case and transferring it to this member of the court issued on March 13, 2001. A chapter 7 trustee was appointed the next day.

On May 3, 2001, we issued a rule upon debtor to show cause why this case should not be dismissed as an abuse of the bankruptcy process pursuant to § 707(b) of the Code. An evidentiary hearing on the court's motion was conducted on May 31, 2001.

After the evidentiary hearing concluded, debtor filed an amended Schedule I and an amended Schedule J.

Amended Schedule I indicated monthly gross income in the amount of $5,000; payroll deductions in the amount of $1,629; and a monthly net income in the amount of $3,371. The only payroll deductions were for taxes and Social Security in the amount of $1,629. No payroll deductions were listed for insurance, union dues, or "other", as appeared on the original Schedule I.

Amended Schedule J listed monthly expenditures totaling $3,329, a mere $42 less than debtor's net monthly income listed on amended Schedule I. According to the amended schedule, debtor's electricity and heating fuel cost had increased three-fold; his food bill had doubled; and his transportation costs, excluding car payments, had more than doubled. Certain expenses not appearing on the original Schedule J also were listed on amended Schedule J. For instance, debtor listed an expenditure in the amount of $250 for "support of additional dependents not at home" and $100 for unspecified "miscellaneous" expenditures.

According to amended Schedule I and amended Schedule J, the difference between debtor's monthly net income ($3,371) and his monthly expenditures ($3229) is only $42, nearly $500 less per month than was indicated on the original schedules. From this debtor obviously would have us conclude that he lacks the resources to pay his pre-petition creditors through a chapter 13 plan once he pays his current monthly living expenses.

## — DISCUSSION —

After notice and a hearing, a bankruptcy court may, on its own motion, dismiss the chapter 7 case of an individual debtor whose debts are primarily consumer in nature if "... the granting of relief would be a substantial abuse of the provisions of ... [chapter 7]". 11 U.S.C. § 707(b).

■ This provision was enacted in response to an ever-escalating number of chapter 7 bankruptcy filings by non-needy individuals. It imposes a restraint upon a debtor's opportunity to obtain bankruptcy relief above and beyond those restraints imposed by §§ 523(a), 707(a), and 727(a) of the Bankruptcy Code. *In re Krohn*, 886 F.2d 123, 126 (6th Cir.1989); *In re Walton*, 866 F.2d 981, 988 (8th Cir.1989). Congress intended when it enacted § 707(b) to deny bankruptcy relief to debtors who are

dishonest or who are not truly in need of such relief. *In re Krohn,* 886 F.2d at 126.

■ Two prerequisites must be met before a case may be dismissed in accordance with § 707(b): (1) the debts of the debtor are "primarily consumer" in nature; and (2) granting the debtor relief in the form of a discharge would be a "substantial abuse" of the provisions of chapter 7 of the Bankruptcy Code. *Gomes v. United States Trustee,* 220 B.R. 84, 86 (9th Cir. BAP 1998).

A debt is "consumer" in nature if it is incurred primarily for a personal, family, or household purpose. 11 U.S.C. § 101(8).

Debtor does not dispute that *all* of the debts listed on his bankruptcy schedules were incurred primarily for personal, family, or household purposes and therefore are consumer in nature. The only issue that must be resolved is whether granting debtor a discharge would result in a "substantial abuse" of the provisions of chapter 7 of the Bankruptcy Code. Debtor vigorously denies that any abuse at all, let alone a substantial one, would result if he is granted a discharge.

The Bankruptcy Code nowhere defines the term "substantial abuse". Congress left it to the courts to imbue it with meaning.

■ As a general matter, substantial abuse exists for purposes of § 707(b) when a chapter 7 debtor does not truly need a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt. *In re Staub,* 256 B.R. 567, 569–70 (Bankr.M.D.Pa., 2000).

■ There is universal agreement among courts that an individual debtor's ability to repay his or her debts from future earnings is, at the very least, a primary factor in determining whether substantial abuse would result in a chapter 7 case. E.g., *Kornfield v. Schwartz (In re Kornfield),* 164 F.3d 778, 784 (2d Cir.1999); *First USA v. Lamanna (In re Lamanna),* 153 F.3d 1, 3 (1st Cir.1998); *In re Koch,* 109 F.3d 1285, 1288 (8th Cir.1997); *In re Green,* 934 F.2d 568, 572 (4th Cir.1991); *In re Krohn,* 886 F.2d at 126; *Zolg v. Kelly (In re Kelly),* 841 F.2d 908, 914 (9th Cir. 1988).

Courts differ, however, concerning whether any other factors must or may be considered in determining whether substantial would occur. They have taken any of three approaches. *See In re Stewart,* 175 F.3d 796, 808 (10th Cir.1999).

Some courts have treated a debtor's ability to repay pre-petition debts as sufficient in and of itself to warrant a finding that substantial abuse would occur. No further inquiry is necessitated. *In re Koch,* 109 F.3d at 1288; *In re Kelly,* 841 F.2d at 914–15.

Other courts have employed a totality-of-the-circumstances standard. While a debtor's ability to pay pre-petition debts is a primary factor, other factors also *must* be considered. These factors include: (1) whether debtor experienced sudden illness, calamity, disability, or unemployment; (2) whether debtor made consumer purchases on the eve of bankruptcy that far exceeded what debtor could repay; (3) whether debtor's personal budget is unreasonable or excessive; (4) whether the schedules and statements of financial affairs accurately depict debtor's financial condition; and (5) whether the debtor filed in good faith. *In re Green,* 934 F.2d at 572–73.

Still other courts have employed a "hybrid" standard. While a debtor's ability to repay *may* be sufficient to warrant dismissal, it also *may* be appropriate to consider other relevant factors. *In re Lamanna,* 153 F.3d at 5; *In re Krohn,* 886 F.2d at 126.

We need not decide which of these standards to employ here. Regardless of which one is employed, we conclude that discharging debtor from his pre-petition debts would be a substantial abuse of the provisions of chapter 7 of the Bankruptcy Code.

Neither the original schedules accompanying the bankruptcy petition, which debtor signed under penalty of perjury, nor the amended schedules accurately portray debtor's financial condition. There is considerable reason to think that the actual difference between debtor's monthly net income and his monthly expenditures is considerably greater than debtor now would have us believe. We are convinced that he deliberately has understated the former and overstated the latter.

Debtor's original Schedule I indicated that his monthly net income was $2,878.53. There is reason to doubt this and to think instead that the amount is substantially greater.

For instance, when pressed by the court to describe what insurance cost him $226.86 per month and what unspecified "other" monthly payroll deduction in the amount of $262.25 he had, debtor was at a loss to say. He feebly responded only that his bankruptcy counsel had prepared the schedules.

We have observed debtor testify and conclude that he is a sophisticated individual who would not have vouched for the accuracy of the information contained in the schedules without first checking. As a consequence, we do not buy debtor's attempt to foist responsibility for the listing of these unexplained payroll deductions upon his bankruptcy counsel.

It is more reasonable to think that debtor's actual monthly net income as listed on amended Schedule I—i.e., $3,371—is more accurate than is the amount listed on original Schedule I—i.e., $2,878.53. The above unexplained payroll deductions are not listed on amended Schedule I. If we treat the former of these amounts as more accurately reflecting debtor's monthly net income and compare it to the monthly expenditures listed on original Schedule J, debtor's surplus monthly income is as much as $900 to $1,000, not $545, greater than his monthly expenditures.

In a transparent (and self-serving) attempt to paint a bleak picture of his ability to repay his pre-petition debts, debtor also increased his alleged expenditures on amended Schedule J by $896 from $2,333 to $3,229. Although we are inclined for reasons just stated to think that amended Schedule I more accurately depicts debtor's monthly net income that does original Schedule I, we are not satisfied that amended Schedule J more accurately depicts debtor's monthly expenditures than does original Schedule J.

Debtor, we have noted, significantly increased his monthly expenditures as listed on original Schedule J from $2,333 to $3,229 on amended Schedule J. For instance, his electricity and heating fuel costs tripled, his food bill doubled, and transportation costs more than doubled. When asked if he had any invoices or statements of account to substantiate such significant increases, debtor stated that he had no such records or that he had them but had not brought them to court for the evidentiary hearing.

Because of our serious misgivings concerning the veracity of debtor's depiction of his financial condition, we are not willing to accept at face value debtor's self-serving assurances concerning the accuracy of the expenditures listed on amended Schedule J. Absent such documentation, we are far more inclined than not to conclude that debtor grossly exaggerated his monthly expenditures on Schedule J to make it

appear that he lacked the wherewithal to pay a significant portion of his pre-petition general unsecured debt.

Debtor's failure to document the purported increases in his monthly expenditures is not the only problem with amended Schedule J. Debtor also listed an expenditure in the amount of $250 per month for "support of additional dependents not at home", which expenditure was not listed at all on original Schedule J.

As far as we are able to determine, this expenditure primarily was for assistance debtor provides to his second wife's minor child. Debtor is not the child's father and apparently is not otherwise legally obligated to provide for the child's support.

Although debtor avers he is generously contributing to the support of this child and, if true, this is laudable, it is not reasonable for debtor's pre-petition general unsecured creditors to involuntarily subsidize this support at their expense. Given debtor's status as a chapter 7 debtor in bankruptcy, its inclusion in his budget renders the budget as a whole unreasonable.

We conclude in light of the foregoing considerations that granting debtor a discharge would amount to an egregious and substantial abuse of the provisions of chapter 7 of the Bankruptcy Code. He is not one of those truly needy debtors in need of a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt. *In re Staub*, 256 B.R. at 569–70. Because debtor already has signaled his unwillingness to proceed as a chapter 13 debtor, there is no point to issuing an order which would give debtor the option of converting to chapter 13 as an alternative to dismissing his case.

An appropriate order shall issue.

## ORDER OF COURT

**AND NOW**, this **18th** day of **July**, 2001, in accordance with the preceding memorandum opinion, it hereby is **ORDERED, ADJUDGED**, and **DECREED** that the above-captioned bankruptcy case be and hereby is **DISMISSED**.

It is **SO ORDERED**.