**In re Larry WELCH, Joann Welch, Debtors.**

**Office of the U.S. Trustee, Movant,**

v.

**Larry Welch, Joann Welch, Respondents.**

**No. 5:02–BK–01096.**

United States Bankruptcy Court, M.D. Pennsylvania.

Oct. 14, 2005.

Paul Philip Ackourey, Esq., Scranton, PA, for Debtors.

## *OPINION*

JOHN J. THOMAS, Bankruptcy Judge.

### PROCEDURAL HISTORY

Larry and Joann Welch filed a voluntary Chapter 7 petition on March 19, 2002.

On June 24, 2002, the United States Trustee filed *United States Trustee's Motion to Dismiss Pursuant to 707(A) or (B).* *See* Doc. # 9. Through the aid of counsel, the Debtors filed an answer. *See* Doc. # 14.

A hearing was held on September 19, 2002, whereby this Court articulated its findings and conclusions on the record and denied the Trustee's Motion. *See* Proceeding Memo/Order of Court (Doc. # 17).

An appeal to the District Court was filed by the U.S. Trustee on September 27, 2002. *See* Notice of Appeal (Doc. # 18). An Order was issued by the District Court on February 27, 2004 reversing the decision of this Court and remanding the matter for further proceedings consistent with the District Court's holding. *See* Docket 3:02–cv–1909 (M.D. of Pa.) at Doc. # 22 and # 24.

A hearing was held by this Court with regard to the District Court decision. After the close of the record, the parties were instructed to file briefs in support of their respective positions and the Court took the underlying matter under advisement. *See* Proceeding Memo (Doc. # 29).

## JURISDICTION

This matter is a core proceeding under 28 U.S.C. § 157(b)(1) and this Court has jurisdiction under 28 U.S.C. §§ 1334, 157 and Middle District of Pennsylvania Standing Order Misc. 84–0203 to render this decision.

## BACKGROUND & FINDINGS

At the time their bankruptcy petition was filed, Larry Welch was employed at Certainteed Corporation of Mountaintop working a minimum of eighty hours per week, seven days a week. His wife, Joann Welch worked at Northwest Area High School teaching mentally and physically handicapped children. Prior to this position, she was employed as a periodontal hygienist for a period of thirteen to fourteen years with a practice within a dental office. However, health issues prevented her from continuing in this position in 1989. Her medical condition restricted her ability to work from 1989 to 1997. She was paralyzed for a significant portion of this period. Joann estimated that she spends approximately $45.00 to $50.00 per week on physical therapy when necessary.

Unable to resume her work as a periodontal hygienist, Joann had to pick a new occupation and elected to return to school and become a teacher for handicapped children when she was able to resume working. Once she had obtained her certification as a teacher, Joann was required to either obtain a master's degree from a credible university or complete twenty-four hours of post-graduate credits within the five years of her certification or lose that certification. After she had obtained

her current teaching position, Joann began working towards a master's degree on a part-time basis. Joann completed her master's degree post-petition.

The Welches had two children at the time of filing—a son, age 24, and a daughter, age 18. Although the Welches cannot claim their son as a dependent on their tax returns, they consider him as such and frequently contribute to his support. This support includes, but is not limited to, providing him with a 2000 Volkswagen Jetta and maintaining the monthly payment of $350.00, plus the cost of automobile insurance. The Jetta was purchased in 2000 and financed for a period of five years.

In addition to providing their son with the Jetta, the Welches also owned a 2001 Toyota Celica and a 2001 Toyota Camry. The Celica was purchased in 2000 and financed for a period of five years. The Camry was purchased in 2001 because a previously owned vehicle was mechanically unsound. Without the use of two vehicles, the Welches would be unable to commute to their respective positions. Larry's rotating shift schedule and his fifty-two mile daily commute prevents the Welches from sharing a vehicle.

The Welches obtained a second mortgage against their home in 2000 and used the proceeds to consolidate some of their unsecured debts. In 2001, the Welches took out a third mortgage against their home in order to consolidate their remaining unsecured debts and pay for some of Joann and their son's educational expenses. At the time of filing, the Welches owed approximately $190,000.00 on a home that had an approximate value of $160,000.00.

Prior to considering bankruptcy, the Welches went to credit counseling services and had considered selling their home.

However, they concluded that a sale would not have satisfied the mortgages. Joann calculated that it would cost them approximately $1,000.00 to $1,200.00 a month to rent a home adequate in size for their family. In addition, Joann estimates that their income taxes would increase by $300.00 to $400.00 per month if they lost the ability to deduct the interest on their mortgages.

On their Schedule F, the Welches listed approximately $150,000.00 in unsecured debts. Of this amount, $35,000.00 represents student loans for Joann and their son's education. Joann testified that the largest portion of their unsecured debt was incurred during the period that she was unable to work for medical reasons. During the period of March 19, 2001 to March 19, 2002, the Welches amassed $37,075.34 of the reported $150,000.00 debt through a series of charges against their credit accounts. These charges ranged from home repairs and improvements to a vacation. The Welches also used these accounts to make payments toward existing obligations.

In their originally filed Schedule I, the Welches indicated that they had a combined net monthly income of $7,707.00. Larry testified that his income was based in part on overtime hours. Although he has been working overtime hours on a regular and consistent basis, he maintained that it is not guaranteed and he will eventually be unable to physically work these excess hours.

Of their reported monthly expenses, they included total mortgage payments of $2,712.24; property and county taxes of

$150.00; $145.00 for Joann's master's degree program; $360.00 for automobile insurance; $1,341.00 in car payments; $350.00 in transportation costs; and $145.00 for Joann's master's degree.[1]

The Debtors had been current up until 2 to 3 months prior to filing for bankruptcy.

■ This matter has been remanded to this Court with instructions to apply the "totality of the circumstances" standard of review which was adopted by the District Court from *In re Lamanna*, 153 F.3d 1 (1st Cir.1998), *In re Green*, 934 F.2d 568, 572 (4th Cir.1991), *In re Krohn*, 886 F.2d 123 (6th Cir.1989), and *In re Staub*, 256 B.R. 567 (Bankr.M.D.Pa.2000).

In *Green*, the Fourth Circuit considered the following factors:

The "totality of the circumstances" approach involves an evaluation of factors such as the following:
(1) Whether the bankruptcy petition was filed because of sudden illness, calamity, disability, or unemployment;
(2) Whether the debtor incurred cash advances and made consumer purchases far in excess of his ability to repay;
(3) Whether the debtor's proposed family budget is excessive or unreasonable;
(4) Whether the debtor's schedules and statement of current income and expenses reasonably and accurately reflect the true financial condition; and
(5) Whether the petition was filed in good faith.

*In re Green*, 934 F.2d 568, 572 (4th Cir. 1991), *accord*, *In re Staub*, 256 B.R. 567 (Bankr.M.D.Pa.2000).

In *In re Krohn*, 886 F.2d 123 (6th Cir. 1989), the ability to pay was again a factor.

1. The Welches presented evidence during the September 19, 2002 hearing and the July 1, 2004 hearing as to particular post-petition changes in their financial situation. However, the vast majority of this testimony was not presented to clarify or amend their financial situation as of the date of filing. Consideration of such can have little impact on this Court's analysis of the United States Trustee's request to dismiss this case based on § 707(b) of the Bankruptcy Code.

A court would not be justified in concluding that a debtor is needy and worthy of discharge where his disposable income permits liquidation of his consumer debts with relative ease.

Other factors relevant to need include whether the debtor enjoys a stable source of future income, whether he is eligible for adjustment of his debts through Chapter 13 of the Bankruptcy Code, whether there are state remedies with the potential to ease his financial predicament, the degree of relief obtainable through private negotiations, and whether his expenses can be reduced significantly without depriving him of adequate food, clothing, shelter and other necessities.

*Id.* at 126–127.

In the First Circuit case of *In re Lamanna*, 153 F.3d 1 (1st Cir.1998), that court adopted the Krohn factors, adding

we reject any per se rules mandating dismissal for "substantial abuse" whenever the debtor is able to repay his debt out of future disposable income, or forbidding dismissal on that basis alone. Such strict interpretations cannot be squared with the open-textured nature of § 707(b) and are inconsistent with § 707(b)'s purpose of guiding, not constraining, bankruptcy courts in the exercise of their equitable discretion. We hold that a bankruptcy court may, but is not required to, find "substantial abuse" if the debtor has an ability to repay, in light of all of the circumstances.

*Id.* at 4–5 (footnotes omitted).

■ Initially, I observe that there were two hearings on this matter. The first hearing held on September 19, 2002, resulted in judgment, an appeal to the District Court, and subsequent reversal. The second hearing was held after remand to allow the parties to litigate those specific factors identified by the District Court

as critical to the outcome. The second hearing, however, presented evidence of the Debtors' current financial state at the time of the hearing on July 1, 2004. Whether the post-bankruptcy circumstances of the Debtors should be considered is an issue that must be addressed. The statute itself is unclear as to the point in time that the issue of "substantial abuse" should be considered. In *In re Pier,* 310 B.R. 347, 354 (Bankr.N.D.Ohio 2004), the court focused on the petition date, though acknowledging that reference to postpetition changes may impact the court's findings with regard to the "ability to pay" factor. I agree with *Pier* that § 707's reference to the term "granting of relief" incorporates the "order for relief" effective upon filing the petition. 11 U.S.C. § 301. Ergo, the "snapshot" of possible abuse must be viewed as of the date of filing the bankruptcy.

### FACTOR 1: SUDDEN ILLNESS, CALAMITY, DISABILITY, OR UNEMPLOYMENT

The record reflects that the female debtor suffered some nerve damage in 1989 from doing dentistry that prevented her from being employed until 1997. (Transcript of Sept. 19, 2002 at 44.) It was during this period of time that most of the debt listed in the petition occurred. *Id.* Nevertheless, the bankruptcy was filed five years after Mrs. Welch returned to work. This illness/disability/unemployment appears too remote in time to be considered a viable factor justifying the filing. There was no other "calamity, disability, or unemployment".

### FACTOR 2: CASH ADVANCES AND CONSUMER PURCHASES FAR IN EXCESS OF ABILITY TO REPAY

There appears to be no evidence submitted of cash advances. The Debtors' obligations can be categorized as mortgage debt ($196,378.95), credit card debt ($73,-718.88), personal loans ($41,974.09), and

student loans ($34,858.22). While the Debtors' income was not meager, it would come far short of addressing their budgeted living expenses as well as their consumer debt. This is not atypical of debtors in bankruptcy.

I find as a fact that the Debtors' consumer purchases were far in excess of their income.

**FACTOR 3: THE DEBTORS' PROPOSED FAMILY BUDGET IS EXCESSIVE OR UNREASONABLE**

The sole standard present in the bankruptcy code of an appropriate "budget" appears to be located in 11 U.S.C. § 1325(b)(2)(A) in conjunction with the term "disposable income".

> "disposable income" means income which is received by the debtor and which is not reasonably necessary to be expended—
>
> (A) for the maintenance or support of the debtor or a dependent of the debtor, including charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3)) to a qualified religious or charitable entity or organization (as that term is defined in section 548(d)(4)) in an amount not to exceed 15 percent of the gross income of the debtor for the year in which the contributions are made;

██ The Welches obviously possess disposable income, i.e., income over and above their reasonable and necessary expenses. Six hundred ninety nine dollars ($699) per month spent toward an 18 year old child's education is unnecessary. *In re Seymour*, 2004 WL 3510114, *3 (Bankr.M.D.N.C. 2004); *In re Staub*, 256 B.R. 567, 570–71 (Bankr.M.D.Pa.2000); *In re Stallman*, 198 B.R. 491, 496 (Bankr.W.D.Mich.1996); *In re Goodson*, 130 B.R. 897, 902 (Bankr.

N.D.Okla.1991); (Transcript of Sept. 19, 2002 at 10 and 29.) Moreover, $416 per month paid for a vehicle for a 25 year old married adult child is also unnecessary (Tr. at page 6), as is the insurance associated with that ($120) (Tr. at page 34). There is also a significant amount spent on housing that is an unnecessary expense. A $2,712.34 monthly mortgage expense together with a $150 additional monthly property tax is far higher than the National and Local Standards issued by the Internal Revenue Service for Luzerne County, Pennsylvania, which set the acceptable housing and utility expense for a family of two at $918 [2].

**FACTOR 4: ACCURACY OF SCHEDULES**

The record reflects that the accuracy of the schedules has not been challenged.

**FACTOR 5: GOOD FAITH**

The lack of good faith has been identified as reason for dismissal under the companion section of § 707(b), i.e., § 707(a). Our Circuit, in the case of *In re Tamecki*, 229 F.3d 205 (3rd Cir.2000), had an opportunity to discuss good faith-bad faith in that context and suggested "[d]ismissal based on lack of good faith ... should be confined carefully and is generally utilized only in those egregious cases that entail concealed or misrepresented assets and/or sources of income, lavish lifestyles, and intention to avoid a large single debt based upon conduct akin to fraud, misconduct or gross negligence." *Tamecki*, 229 F.3d at 207. While the Debtors' lifestyle does not comport with traditional concepts of lavishness, unquestionably, they incurred a number of unnecessary expenses over and above those earlier referred to in considering factor two. Among those expenses

---

**2.** These standards were utilized by Congress in formulating guidelines for use in determining abuse under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. While its application is not mandatory in the case before me, reference to those standards is a useful tool in determining whether a debtor's expenses are reasonable and necessary.

was a beach vacation shortly before filing the bankruptcy and a $3000 dog fence. (Transcript of Sept. 19, 2002 at 18.) One thousand dollars ($1,000) for the 25 year old son's rent was unnecessary and unreasonable. (Transcript of Sept. 19, 2002 at 20.) The expenditure of $5,000 for living room furniture at a time when the Debtors were "buried" with debt, also appears to suggest that they were not the least mindful of their financial status regarding discretionary expenses. (Transcript of Sept. 19, 2002 at 22–23.)

FACTOR 6: STABILITY OF INCOME

The testimony supported a conclusion that the income of the Debtors was regular at the time of filing.

FACTOR 7: ELIGIBILITY FOR CHAPTER 13

The record clearly indicates the Debtors would qualify under Chapter 13 since they are individuals with regular income within the economic parameters of 11 U.S.C. § 109(g). They also possess disposable income as that term has been heretofore defined.

FACTOR 8: AVAILABILITY OF STATE REMEDIES OR RELIEF THROUGH PRIVATE NEGOTIATIONS

The record is absent of this consideration.

In summary, the Debtors' disregard for their financial inability to pay current debt while they continued to incur discretionary obligations prior to bankruptcy, weigh heavily in this Court's conclusion that the totality of circumstances dictate that affording the benefits of Chapter 7 would be a substantial abuse of those provisions. Moreover, I can find no sudden turn of events that put the Debtors in the predicament they find themselves. The Debtors' substantial income allows significant funds to be utilized for the benefit of creditors should they elect to live a more modest lifestyle. I, therefore, conclude that the case should be dismissed under § 707(b), effective in ten days, so as to afford the Debtors an opportunity to convert their case to one under Chapter 13, should they desire.

An Order will follow.

### ORDER

For those reasons indicated in the Opinion filed this date, IT IS HEREBY

ORDERED that the Motion of the U.S. Trustee to Dismiss the above case is granted, effective in ten days, so as to afford the Debtors an opportunity to convert their case to one under Chapter 13, should they desire.