In re Christine Ann CARTER, Debtor.

Bankruptcy No. 95–19069DWS.

United States Bankruptcy Court,
E.D. Pennsylvania.

Aug. 20, 1996.

Brendan J. Sherman, Ciardi, Maschmeyer & Karalis, P.C., Philadelphia, PA, for Debtor.

Helene S. Jaron, Kaufman, Coren, Ress, Weidman & Silverang, P.C., Philadelphia, PA, for Lynda Styskal.

Edward Sparkman, Philadelphia, PA, Chapter 13 Trustee.

Joseph Minni, Philadelphia, PA, United States Trustee.

### *MEMORANDUM OPINION*

DIANE WEISS SIGMUND, Bankruptcy Judge.

Before the Court is an objection to confirmation of the Debtor's Chapter 13 plan filed by Lynda Styskal ("Styskal"), an unsecured creditor in the instant bankruptcy case. Styskal asserts, among other things, that the Debtor's plan does not provide for the submission of all of the Debtor's projected disposable income over the plan's life and is not proposed in good faith.[1] Upon reviewing the Debtor's schedules and considering the arguments of counsel, including those set forth in the post-trial briefs submitted by the parties, we believe the objection has merit. Accordingly, we will deny confirmation of the Debtor's plan without prejudice and order the Debtor to file amended schedules to include the income and expenses of herself and her husband so we can properly evaluate whether Debtor's plan complies with § 1325(b) of the Bankruptcy Code.

### BACKGROUND

The Debtor, Christine Ann Carter, is a married woman residing in Delaware County, Pennsylvania, with her husband, Charles S. Carter, in a house they own as tenants by the entireties. Prior to the filing of the bankruptcy, Styskal filed a foreign judgment in Delaware County entered against the Debtor

---

1. While other grounds were raised in the written objection, Styskal presses only these two points in urging denial of confirmation.

and her husband in the amount of $255,970.27. Soon afterwards, Styskal began execution proceedings against the Carters and their house was scheduled to be sold at sheriff's sale.

Prior to the sale, the Debtor filed the above captioned bankruptcy case under Chapter 13. The case was filed by her alone, without her husband. By December 18th the Debtor filed her schedules, statement of financial affairs and Chapter 13 plan. On the schedules, the Debtor listed monthly income of $600 and monthly expenses of $500 for herself alone, excluding the income and expenses of her husband.

On December 19th, the Debtor filed a motion to avoid Styskal's judicial lien under 11 U.S.C. § 522(f). Although the house was valued at $365,000, it was nevertheless fully encumbered by several mortgages, leaving Styskal's judicial lien unsecured and vulnerable to attack under section 522(f). On March 3, 1996, we issued an order fully avoiding Styskal's lien in so far as it was a charge on the Debtor's interest in the house.

The Debtor's plan anticipated a successful outcome to the lien avoidance litigation and provided for treatment of Styskal's claim as a general unsecured debt in the event the lien was avoided. The plan calls for payments from the Debtor in the amount of $75 per month for 36 months.

On April 24, 1996, Styskal filed the present objection to the Debtor's plan. The objection raised a number of issues, including whether the plan provided for the payment of all of the Debtor's projected disposable income under 11 U.S.C. § 1325(b) and whether it was filed in good faith.[2] Styskal's objection to confirmation calls into question the role of a nondebtor spouse's income when a married person individually files a petition for relief under Chapter 13.

On July 24, 1996, at a hearing on confirmation of the Debtor's plan, Styskal pressed her objection and pointed out that the Debtor failed to provide full disclosure of her fami-ly's financial status by neglecting to list the income and expenses of her husband. Although Styskal presented no evidence on the issue, she alleged that Charles Carter had a high income, in the range of $90,000, which should have disclosed on the Debtor's schedules. We took the matter under advisement and requested the parties to submit memorandums in support of their positions.

**DISCUSSION**

 Upon objection by an unsecured creditor or the trustee, a Chapter 13 plan that does not repay the allowed claims of unsecured creditors in full may only be confirmed if it provides for the debtor to commit all of his disposable income for a 36 month period to plan payments. 11 U.S.C. § 1325(b)(1)(B). Disposable income is defined as income received by the debtor that is not reasonably necessary for the support of debtor or his dependents. 11 U.S.C. § 1325(b)(2)(A). Although the Code does not define what is reasonable and necessary, case law holds that the standard is directed toward the debtor's basic need for support, unrelated to the debtor's former status and lifestyle. *In re Cardillo*, 170 B.R. 490, 491 (Bankr.D.N.H.1994); *In re Gillead*, 171 B.R. 886, 890 (Bankr.E.D.Cal.1994); *In re Navarro*, 83 B.R. 348, 355–56 (Bankr.E.D.Pa.1988) *In re Kitson*, 65 B.R. 615, 619–20 (Bankr. E.D.N.C.1986); *In re Jones*, 55 B.R. 462, 466 (Bankr.D.Minn.1985). Ordinarily, expenditures for necessary non-luxury items are not questioned, but the existence of expenditures on such items raises concerns as to the propriety of the debtor's budget. *Navarro*, 83 B.R. at 355–56.

 To apply these provisions to a married debtor who files individually, courts base their calculation of the debtor's disposable income on the debtor's family budget, including the income and expenses of the nondebtor spouse. *In re Pickering*, 195 B.R. 759, 762 (Bankr.D.Mont.1996); *In re Cardillo*, 170 B.R. at 491; *In re Belt*, 106 B.R. 553, 561–63 (Bankr.N.D.Ind.1989); *In re Carbajal*, 73

---

2. Given our ruling herein, we need not presently address the other prong of Styskal's objection, *i.e.*, that the plan was not filed in good faith. While certain of the courts to consider the disclosure issue have done so in the context of a good faith analysis, we understood Styskal's good faith argument to be broader, *i.e.*, whether Debtor's use of bankruptcy to deprive a joint creditor of its security in a joint asset is an abuse of the provisions, spirit and purpose of Chapter 13.

B.R. 446 (Bankr.S.D.Fla.1987); *In re Saunders,* 60 B.R. 187 (Bankr.N.D.Ohio 1986). Consideration of the nondebtor spouse's income is seen as necessary because a portion of that spouse's income is likely to be applied to the basic needs of the debtor, potentially increasing the share of the debtor's own income that is not reasonably necessary for support.[3] As stated by one court:

> Most courts include the debtor's spouse's income in the budget for purposes of calculating projected disposable income under § 1325(b) notwithstanding that the spouse is not a debtor in the Chapter 13 case. The theory is that the nonfiling spouse's income is available to defray the debtor's reasonably necessary expenses, thus freeing a larger portion of the debtor's separate income for satisfaction of unsecured claims. Creditors have argued successfully that it would be unfair to allow the debtor's separate income to be used for the family necessities and not count a nonfiling spouse's income which would remain "disposable" to the debtor and uncommitted to the plan.

*In re Soper,* 152 B.R. 985, 988 (Bankr.D.Kan. 1993), *quoting* 1 K. Lundin, Chapter 13 Bankruptcy § 5.30 at 5–98f to 98g (1992).

This view recognizes the reality that married couples live as a unit, pooling their income and expenses. This reality is also reflected in the Official Bankruptcy Forms which require a married debtor in Chapter 13 to report the income and expenses of herself and her spouse. Official Form No. 6, Schedules "I" & "J". The Official Forms, moreover, are mandatory for debtors to follow pursuant to Bankruptcy Rule 1007(b)(1) which instructs debtors to file a schedule of income and expenditures as prescribed by the Forms. F.R.B.P. 1007(b)(1).

Turning to the present case, then, it is evident that the Debtor's plan is not yet ready for confirmation. The Debtor has not satisfied her burden of demonstrating that all of her projected disposable income is being committed to the plan. Without income and expense information from the Debtor's husband we are unable to make a determination of the Debtor's disposable income. If Mr. Carter's income is as large as it is alleged to be, it may be that Debtor's basic needs are satisfied therefrom, thus freeing a larger portion of her own money for use in the plan. In any event, we are unable to render a judgment on this issue until all of the information is provided.

■ The schedules as presently filed are misleading, giving the impression that the Debtor, with a monthly income of only $600, is impecunious when in fact she may enjoy a lifestyle of considerable comfort. While the instructions on the schedules unambiguously require that income and expense information be included for a nonfiling spouse, we will assume for the purpose of this decision that the Debtor's omission of material information was based on a misunderstanding of her obligations and not a reflection of bad faith on her part. Honesty and full disclosure are the most basic hallmarks of good faith. *See In re March,* 83 B.R. 270, 275 (Bankr. E.D.Pa.1988).

Good faith also requires the Debtor to rethink her proposed plan to the extent she may have had an unreasonably narrow view of the disposable income required to be dedicated to a Chapter 13 plan. This is especially so where, as here, the Debtor's husband stands to benefit substantially from the Debtor's bankruptcy filing. The filing will have the effect of converting a joint debt, for which all of the Carters' jointly owned property is liable, to a debt owed only by the husband. In the latter instance, all of the Carters' entireties property, such as their house, will be immune from execution. It is, thus, fair and equitable for Mr. Carter's income and expenditures to be included in the schedules and have an effect upon the level of payment expected from the Debtor in order to achieve confirmation.

---

3. While we initially suggested that the failure to schedule the income of the nondebtor spouse should not be a barrier to confirmation of the debtor's plan so long as the nondebtor spouse's expenses were similarly excluded, our review of the issue now leads us to a different conclusion.

The nondebtor spouse's income is included in the § 1325(b) analysis not because it is treated as statutorily defined income to the debtor but rather because consideration of that resource is necessary to an accurate assessment of the debtor's budget.

## CONCLUSION

For the reasons stated above, confirmation of the Debtor's plan is denied without prejudice. The Debtor is directed to file amended schedules "I" and "J" to include the income and expenditures of herself and her husband. An order consistent with this opinion will be issued.

### *ORDER*

**AND NOW,** this 20th day of August, 1996, upon consideration of Linda Styskal's Objection to Confirmation, and after notice and hearing and for the reasons stated in the accompanying Memorandum Opinion,

It is hereby **ORDERED** that:

1. Confirmation of the Debtor's Chapter 13 plan is **DENIED** without prejudice; and

2. Within 15 days of entry of this Order, the Debtor shall file amended copies of schedules "I" and "J" disclosing her spouse's income and expenses and serve copies thereof on Lynda Styskal's counsel.