**In re Lisa WILLIAMSON, Debtor.**

**No. 02 B 15755.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

July 16, 2003.

Glenn Stearns, Trustee, Lisle, IL, for Movant.

Gregory K. Stern, Monica C. O'Brien, Chicago, IL, for Respondent/Debtor.

## MEMORANDUM OPINION ON TRUSTEE'S OBJECTION TO CONFIRMATION AND MOTION TO DISMISS

JACK B. SCHMETTERER,
Bankruptcy Judge.

### BACKGROUND

Lisa Williamson ("Debtor") filed under Chapter 13 of the Bankruptcy Code (Title 11, U.S.C.) on April 22, 2002. On December 11, 2002, the Debtor filed a Modified Chapter 13 Plan. On February 3, 2003, a hearing on the Chapter 13 Trustee's Objection to Confirmation and Motion to Dismiss was conducted and evidence taken. The Debtor and non-filing spouse appeared and gave testimony. After presentation of evidence and argument, the parties briefed the issues.

The Trustee argues that confirmation of the pending amended Plan should be denied for several reasons: (1) the Plan provides for payment of over $59,000.00 for a joint income tax debt; (2) the Plan does not include the non-filing spouse's income and expenses under the disposable income requirement of 11 U.S.C. § 1325(b); (3) the Plan does not pledge all of the Debtor's disposable income required by 11 U.S.C. § 1325(b)(2)(A) because it allows the non-filing spouse to pay for his whole-life insurance policy and a jointly-leased 1996 Porsche 911 which are not "reasonably necessary"; and (4) the Plan does not include an increase in the Debtor's disposable income when her car loan is paid off in November 2004.

Based on the following Findings of Fact and Conclusions of Law, the Court sustains the Trustee's objection to confirmation of the Plan and denies confirmation, but reserves ruling on his motion to dismiss. The Debtor is given fourteen days to file a Fourth Amended Plan and Amended Schedules. If amended Plan and Schedules are not filed in conformity with this ruling, the case shall be dismissed. If amended Plan is filed dealing with the problems discussed below, a continued confirmation hearing will be noticed in Chicago by the Chapter 13 Trustee for August 12, 2003 at 10:30 a.m. The case is set in Chicago for status on that date and time. Absent an adequate Amended Plan and Amended Schedules being filed, this case will be dismissed on Trustee's pending Motion.

### JURISDICTION

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(B) and (L). Furthermore, venue is proper under 28 U.S.C. § 1409(a).

### FINDINGS OF FACT

The Debtor, who has a non-filing spouse, filed a Chapter 13 Petition on April 22, 2002. They operate a commercial horse stable. The Debtor and her non-filing spouse filed joint federal and state income tax returns in the years prior to this bankruptcy. They have a joint unsecured debt of $10,010.26 (excluding penalties) due to the Illinois Department of Revenue and $49,328.83 (excluding penalties) to the Internal Revenue Service. Thus, they have a joint unsecured total tax debt of $59,339.09 (excluding penalties).

The Debtor has a total monthly income of $2,256.47 (including child support in the amount of $650) while the non-filing spouse

has a total monthly income of $7,774.19, making their total combined monthly income $10,030.66. The family has monthly expenses of $8,627.09. Thus, their combined disposable income is $1,403.57. In the Debtor's Modified Plan, she proposes to make monthly payments of $1,400 for sixty months. Under the Amended Schedule J and Modified Plan, the non-filing spouse will be using 100% of his income to pay approximately 90% of the household expenses. The Debtor will be paying for the remaining 10% of the household expenses with 38% of her income, leaving 62% of her income to fund the Plan.

The non-filing spouse carries two life insurance policies which upon death will generate $1,000,000. One of those is a term policy, and one is a whole life insurance policy that has a current cash value of $6,000. They make monthly payments of $189 for the term policy and $600 for the whole life policy that builds a cash value, for a total of $789. They are not enrolled in any retirement programs, and do not have any retirement benefits, IRA's, or participation in any 401(k) plan.

The Debtor and her non-filing spouse jointly lease a 1996 Porsche 911, which is only driven by the non-debtor. The Debtor drives a 1999 GMC Suburban. The family also has a GMC Sierra that pulls the horse trailer, and the non-debtor's business owns two additional cars.

The Debtor's Plan and budget proposes to make payments directly to Harris Bank on her 1999 GMC Suburban in the amount of $871.66 each month. According to the terms of the loan, the payments will be complete as of November 2004. The Debtor and her non-filing spouse testified that the 1999 GMC Suburban has close to 100,000 miles on it, and they claim a future need to replace it with another vehicle in November of that year. For that reason, they do not offer to add the monthly $871.66 to the disposable income after the Suburban is paid off in that month.

Debtor proposes to make monthly Plan payments of $1,400 for sixty months for a total of $84,000. Assuming all Plan payments are made, $78,120 would be available for creditors after Chapter 13 Trustee's fees of about $5,880 are paid.[1] This would pay 100% of the $3,312.88 mortgage arrears and 100% of the $59,339.09 priority tax debt. The remaining $15,468.03 would pay approximately 10.9% or less[2] of the amount of $142,167.96 as listed in the amended Plan as the general unsecured debt.[3] However, the Debtor's Schedules erroneously label the priority tax debt as unsecured non-priority debt, and fail to include all of the general unsecured debt. Therefore, the Schedules must in any event be amended to make them complete and accurate.

## CONCLUSIONS OF LAW

### Standards for Confirmation

In order for a debtor's proposed Chapter 13 Plan to be confirmed, it must meet the requirements set forth in 11 U.S.C.

---

1. The Attorney's Application for Compensation filed January 31, 2003 for the total amount of $10,920.35 has not yet been approved. Attorneys have already received a $2,200 pre-petition retainer from the Debtor, and thus request an additional $8,720.35. For any amended plan to be approved, it would need to provide for the attorney's fees. The current Plan does not include or provide for any attorney's fees.

2. The percentage that general unsecured creditors might receive will decrease significantly once attorney's fees are added to the cash flow projected under the Plan.

3. This figure does not include an additional $12.69 general unsecured tax debt.

§ 1322. 11 U.S.C. § 1322(a)(2) states that the Plan must "provide for the full payment ... of all claims entitled to priority under section 507....." Also, a Plan should be confirmed only if it meets requirements set forth in 11 U.S.C. § 1325(b)(1)(B) which states that the Plan must pledge "all of the debtor's projected disposable income....." Disposable income is defined in 11 U.S.C. § 1325(b)(2) as "income which is received by the debtor and which is not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor....."

Although 11 U.S.C. § 1325(b)(2) only refers to "debtor," it has been held that the income and expenses of the non-filing spouse are to be considered when determining whether all of a debtor's disposable income is being applied to the Plan. *In re McNichols,* 249 B.R. 160, 169 (Bankr. N.D.Ill.2000). In addition, the Plan must "first use all of the non-filing spouse's income to pay expenses....." *Id.*

*11 U.S.C. § 1322(a)(2) Requirements Are Met*

■ In this case, the joint unsecured total U.S. and Illinois tax debt of $59,339.09 (not including penalties) is an unsecured priority claim under 11 U.S.C. § 507(a)(8). Thus, the Plan must provide as it does for the full payment of the joint tax debt of the Debtor and her husband. In his Objection to Confirmation and Motion to Dismiss, the Chapter 13 Trustee argues that the non-filing spouse is thereby receiving a great benefit through this Plan at the expense of other unsecured creditors. While this may be true, it is not a legal basis to deny confirmation. The Debtor's Plan meets the requirements of 11 U.S.C. § 1322(a)(2) to the extent it provides for full payment of the total joint tax debt.

*11 U.S.C. § 1325(b)(1)(B) Requirements Are Not Met*

■ However, the Debtor's Plan does not meet the disposable income requirements of 11 U.S.C. § 1325(b)(1)(B). The Debtor here agrees that the disposable income test requires an analysis of the family budget, including the income and expenses of the nondebtor spouse. *See McNichols,* 249 B.R. at 169 and cases cited. Although this case is an individual filing, the non-Debtor's income and expenses must therefore be taken into consideration. The nondebtor spouse's income is included in the § 1325(b) analysis not because it is treated as statutorily defined income to the debtor but rather because consideration of that resource is necessary to an accurate assessment of the debtor's budget. *In re Carter,* 205 B.R. 733 at 736 (Bankr.E.D.Pa.1996).

Precedent supporting inclusion of the income of the non-debtor spouse recognize that the husband and wife are a single economic unit and that the totality of the family's income and expenses is appropriately considered in calculating disposable income. *McNichols,* at 169.

The *Carter* case correctly defined the issue when the court stated that "The non-debtor spouse's income is included in the § 1325(b) analysis not because it is treated as statutorily defined income to the debtor but rather because consideration of that resource is necessary to an accurate assessment of the debtor's budget". *Carter* at 736, fn. 3. This position is also stated in the case of *In re Soper,* 152 B.R. 985, 988 (Bankr.D.Kan.1993), quoting K. Lundin, *Chapter 13 Bankruptcy* § 5.30 at 5–98f to 98g (1992). Failure to consider the impact of the non-debtor spouse income would leave the debtor's unsecured creditors to subsidize the spouse's expenses. *Carter* at 736.

The analysis of disposable income is no different here than in a case in which both spouses file jointly. The economic realities of the situation are the same, since a married couple is a single economic unit. They both receive in the case of the filing spouse all benefits of the joint income and expenses as well as the benefits of debt payment. To allow a different standard to apply would encourage parties to "game" the bankruptcy system by one spouse filing and the other not doing so to allow greater discretion in use of their joint income.

Therefore, the non-Debtor's income and expenses must be taken into account, and his expenses as well as her expenses must be "reasonably necessary" according to 11 U.S.C. § 1325(b)(2).

### The 1996 Porsche is Reasonably Necessary

■ The Trustee argues that both the Debtor and the non-filing spouse are listed as lessees of the 1996 Porsche 911 and that their payments for the Porsche are not "reasonably necessary." Although the Debtor is listed as a lessee of the Porsche, she drives the GMC Suburban and the non-filing spouse drives the Porsche. Another vehicle is used to pull the horse trailer, and two other service vehicles are owned by the non-debtor's business. Thus, there are only two cars available for both spouses. Although a Porsche auto is usually considered a luxury item, the non-filing spouse in this case uses the seven-year-old Porsche as his means of transportation. Furthermore, he testified that they are in default on the lease payments and would still be held liable for any deficiencies even if they surrendered the car to their secured creditor. Because the Porsche is the non-Debtor's means of transportation, he would need to acquire a new vehicle if he were to surrender the Porsche, in addition to paying for any defi-

ciencies. Thus, there would be no material benefit to creditors if the non-Debtor surrendered his old Porsche and acquired a new vehicle. This auto is his means of transportation and also appears to be useful to aid him in his business needs; it is therefore reasonably necessary.

### Plan Payments Must Increase when GMC Suburban Loan Payments are Paid Off

■ The Debtor's Plan proposes to make payments directly to Harris Bank on her 1999 GMC Suburban in the amount of $871.66 each month. The Debtor and her non-filing spouse have testified that the 1999 GMC Suburban has close to 100,000 miles on it and claim that it will need to be replaced with another car in November of 2004. However, there was no preponderant evidence to show that the GMC vehicle will necessarily break down and be undriveable when the loan is paid off in November 2004. If the car does break down and another vehicle is necessary, the Debtor must then motion the Court for permission to purchase another vehicle. But viewing the facts as they now exist, after the loan payments are completed in or after November 2004, the monthly payment of $871.66 will be disposable income at that time and therefore must now be included in the Plan so as to provide for increased monthly payments at that time.

### Whole Life Insurance Policy is Not Reasonably Necessary

■ The courts that have found payments for life insurance to be reasonably necessary have done so only to the extent that the policy does not have any investment or cash value component. *In re Smith,* 207 B.R. 888 (9th Cir. BAP 1996), *In re Presley,* 201 B.R. 570, 575 (Bankr. N.D.Fla.1996), *In re Husemann,* 2001 WL 1757048 (Bankr.D.N.H.2001). The non-Debtor spouse's whole life insurance policy

in this case is an investment vehicle as the policy builds cash value and allows the debtor and her spouse to accrue a savings vehicle at the expense of their creditors. The debtor and her spouse have a term life insurance policy without cash value for half of a million dollars, and that is an arguably necessary expense to protect a surviving spouse. But the additional half million dollar coverage of whole life policy is not "reasonably necessary."

While some life insurance family coverage in a policy without accruing cash value may well be necessary here, the second policy that builds savings is not. Moreover, the whole life premium is $600 per month. It has been held that a life insurance premium of $350 per month, regardless of any savings component, is excessive and not reasonably necessary for the debtor and her dependant's support and maintenance. *In re Rothman*, 204 B.R. 143, 159 (Bankr.E.D.Pa.1996).

Thus, the whole life insurance policy in this case is not "reasonably necessary" and the amount of the monthly policy premium for that policy should be included in the Debtor's disposable income. The Debtor has failed to include that premium as disposable income, and therefore failed to meet the disposable income requirement of 11 U.S.C. § 1325(b).

### CONCLUSION

For the foregoing reasons, the Chapter 13 Trustee's Objection to Confirmation is sustained and confirmation is by separate order denied. The Debtor is given 21 days to file a further Amended Plan and accurate Amended Schedules. If Amended Plan and Schedules are not filed, the case will be dismissed. If a Plan is filed, a continued confirmation hearing will be noticed by the Trustee in Chicago. A separate order will be issued in conformity with this decision.