**In re Charles FALKE, Debtor.**

**No. 301–41901–tmb7.**

United States Bankruptcy Court,
D. Oregon.

Oct. 7, 2002.

considered carefully the oral testimony and arguments presented and have read counsel's submissions in detail. The following findings of fact and legal conclusions constitute the court's findings under Federal Rule of Civil Procedure 52(a), applicable in this proceeding under Federal Rule of Bankruptcy Procedure 9014.

Kelly K. Brown, Portland, OR, for Debtor.

M. Vivienne Popperl, Portland, OR, for U.S. Trustee.

John Mitchell, Portland, OR, trustee.

## MEMORANDUM OPINION

PATRICIA M. BROWN, Bankruptcy Judge.

This matter came before the court on the United States's Trustee's ("UST") Motion to Dismiss this case on the grounds that the filing constitutes a substantial abuse of the bankruptcy system. The UST's motion is based on its contention that the Debtor has the ability to repay a substantial portion of his debt to creditors in a Chapter 13 case, if his non-debtor spouse paid her proportionate share of the couple's joint household expenses, a contention that the Debtor vigorously disputes.

A hearing on this matter was held on July 24, 2002. The Debtor was represented by Kelly Brown. The UST was represented by Vivienne Popperl. Following the hearing I took the matter under advisement.

I have reviewed my notes, the exhibits, and the pleadings and other submissions in the file. I also have read applicable legal authorities, both as cited to me and as located through my own research. I have

## FACTS

The Debtor filed a Chapter 7 case on November 29, 2001. The UST filed a motion to dismiss for substantial abuse on March 1, 2002. The UST filed a Memorandum in Support of its Motion to Dismiss for Substantial Abuse on June 5, 2002, which included a "STATEMENT OF AGREED UPON FACTS."

1. *Assets*

According to the Debtor's schedules he owns no real property. His personal property is valued at $3,185.00, virtually all of which he has claimed as exempt.

2. *Liabilities*

a. *Secured.* The Debtor scheduled one secured debt in the amount of $9,454.00 owed to World Mark/Eagle Crest for a time share. He valued his interest in the time share, which he owns jointly with his wife, at $50.00.

b. *Priority Debts.* The Debtor scheduled $5,473.00 in priority unsecured debt. All of this is owed to the Oregon Department of Revenue for unpaid taxes for 1999 and 2000.

c. *Unsecured Debts.* The Debtor scheduled $59,152.00 in general unsecured debt. $16,392.00 of the Debtor's unsecured debt consists of a deficiency on a "short sale" of his residence. The bulk of the

remaining unsecured debt is credit card debt.

### 3. *Income*

a. *Debtor.* The Debtor is a retired school teacher. The Debtor's gross pay for 2001 from the State Teachers' Retirement System of California was $49,882.60. $9,442.84 was withheld for payment of federal taxes. In addition, he received $1,782.00 in social security income. The Debtor continues to receive net monthly payments of $3,409.00 on account of his retirement and $152.00 per month Social Security, for a total of $3,561.00.

b. *Debtor's Spouse.* The Debtor's spouse is employed by Nike. Her net monthly income after taxes is $3,663.00.

### 4. *Expenses*

According to the Debtor's Amended I Schedule, the parties have a joint net monthly income of $7,275.00. The Debtor contributes $3,612.00 of this amount. The balance, $3,663.00, comes from his wife's income. According to the Amended J Schedule, the Debtor and his wife have expenses of $6,991.00. Additionally, the Debtor's wife has deductions taken out her paycheck for daycare ($800), 401(k) contributions ($361), insurance ($663), loan payment ($97), car insurance ($94). Therefore, they argue that they have expenses totaling$9,006.00, leaving them with a negative monthly income of $1,731.00.

According to the UST, the Debtor and his spouse divide payment of their expenses as follows:

| Expense Item | Amount | Responsible Party | Debtor's Monthly Family Expense | Spouse's Monthly Family Expense |
|---|---|---|---|---|
| Rent | $1200.00 | Debtor | $1200.00 | $ –0– |
| Electricity and heating fuel | 121.00 | Debtor | 121.00 | –0– |
| Water and sewer | 55.00 | Debtor | 55.00 | –0– |
| Telephone | 33.00 | Debtor | 33.00 | –0– |
| Garbage | 32.00 | Debtor | 32.00 | –0– |
| Cable | 48.00 | Debtor | 48.00 | –0– |
| Phone Cards | 35.00 | Spouse | –0– | 35.00 |
| Home maintenance | 25.00 | Debtor | 25.00 | –0– |
| Food | 650.00 | Debtor/Spouse | 450.00 | 200.00 |
| Clothing | 95.00 | Debtor | 95.00 | –0– |
| Laundry | 65.00 | Debtor | 65.00 | –0– |
| Medical and dental | 220.00 | Debtor | 220.00 | –0– |
| Transportation | 350.00 | Debtor/Spouse | 200.00 | 150.00 |
| Recreation | 160.00 | Debtor/Spouse | 140.00 | 20.00 |
| Charitable contributions | 40.00 | Debtor | 40.00 | –0– |
| Spouse's car insurance | 94.00 | Spouse | –0– | 94.00 |
| Spouse's auto | 575.00 | Spouse | –0– | 575.00 |
| Insurance (unspecified) | 663.00 | Spouse | –0– | 663.00 |
| Daughter's music lessons | 65.00 | Debtor | 65.00 | –0– |
| Daughter's golf lessons | 170.00 | Debtor | 170.00 | –0– |

| Expense Item | Amount | Responsible Party | Debtor's Monthly Family Expense | Spouse's Monthly Family Expense |
|---|---|---|---|---|
| Credit card payments | 1682.00 | Spouse | –0– | 1,682.00 |
| Time-share loan | 227.00 | Spouse | –0– | 227.00 |
| Current taxes on Debtor's pension | 277.00 | Debtor | 277.00 | –0– |
| Spouse's 401(k) | 361.00 | Spouse | –0– | 361.00 |
| Spouse's loan repayment | 97.00 | Spouse | –0– | 97.00 |
| Daycare | 800.00 | Spouse | –0– | 800.00 |
| Payment for support of spouse's adult son | 250.00 | Spouse | –0– | 250.00 |
| Orthodontist (daughter) | 125.00 | Debtor | 125.00 | –0– |
| Totals | $8515.00 | | $3361.00 | $5154.00 |

## DISCUSSION

### 1. *Substantial Abuse Standard*

Bankruptcy Code § 707(b) provides, in pertinent part, that

The court ... may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor.

■ The Ninth Circuit has held that substantial abuse may be found if the debtor has the ability to pay a significant portion of debt through a Chapter 13 without undue hardship. *In re Kelly*, 841 F.2d 908, 914–15 (9th Cir.1988). While there is no threshold repayment percentage for a finding of substantial abuse where the "ability to pay" is applied, the Ninth Circuit Bankruptcy Appellate Panel has held that substantial abuse exists where the debtor has the ability to fund a Chapter 13 plan with a 43% return to unsecured credi-

tors. *In re Gomes*, 220 B.R. 84, 87 (9th Cir. BAP 1998).

■ A debtor's ability to repay his or her debts within the context of 707(b) is determined by applying the same test that is used to determine whether a debtor is contributing all of his or her disposable income to a proposed plan. *In re Kelly*, *supra*, 841 F.2d at 915.

### 2. *Disposable Income*

The UST contends that the Debtor is paying the bulk of the household expenses, and that, as a result, the Debtor's creditors are, effectively, subsidizing the life style of the Debtor's non-debtor spouse. In addition he contends that some of the Debtor's expenses, including those for music lessons and golf lessons, are not reasonably necessary for the support and maintenance of the Debtor or his dependents.

The Debtor disagrees with the UST's assessment of how expenses are divided in his household. He contends that he and his wife "pay all of the bills between themselves, as best they can, with all income

contributing to the household bills." He further contends that costs of the music and golf lessons, "are negligible relative to the total household costs" and "[do] not alter the basic fact that there is still insufficient income to pay normal household bills, much less any money to pay toward [the Debtor's] general unsecured creditors."

Were the parties equally liable on all of the obligations listed on their Schedule J, I would agree with the Debtor. However, they are not. The scheduled expenses shown on the Amended Schedule J include $2,448.00 for items on which the Debtor apparently either has no liability now or will have no liability if he obtains a Chapter 7 discharge, including his spouse's car payment, car insurance, loan repayment and credit card payments. In addition, his spouse contributes $361.00 per month toward *her* retirement plan, $250.00 per month toward the support of *her* adult son, $663.00 per month toward *her* unspecified insurance, and $800.00 towards a step grandson's daycare. In fact, her *individual* expenses, which total $4,522.00 exceed her monthly net income by $859.00, leaving her with nothing to contribute toward the parties' joint expenses, including rent, utilities, food, clothing, transportation or medical and dental expenses. Consequently, I find that the Debtor is paying all of the parties' day to day living expenses, with his wife contributing nothing from her earnings toward their joint expenses. I must, therefore, determine whether, given these facts, the Debtor has the ability to fund a Chapter 13 plan.

As noted, the test for determining whether a debtor has the ability to fund a Chapter 13 plan is identical to that used to determine whether the debtor is committing all of his disposable income to a proposed Chapter 13 plan. Disposable income is defined as "income which is received by the debtor and which is not reasonably necessary to be expended—

(A) for the maintenance or support of the debtor or a dependent of the debtor . . . ." 11 U.S.C. § 1325(b)(2)(A).

The Ninth Circuit has not addressed the issue of whether the income of a non debtor spouse should be included with that of the debtor for purposes of this test. However, most courts which have addressed the issue have, at a minimum, required the consideration of the non debtor spouse's income, *see, e.g., In re Engskow,* 247 B.R. 314 (Bankr.M.D.Fla.2000); *In re Cardillo,* 170 B.R. 490 (Bankr.D.N.H.1994); *In re Bottorff,* 232 B.R. 171 (Bankr.W.D.Mo. 1999) while others have required that the income of the non debtor spouse be included with that of the debtor. *In re Staub,* 256 B.R. 567 (Bankr.M.D.Pa.2000), *In re Carter,* 205 B.R. 733 (Bankr.E.D.Pa.1996); *In re Saunders,* 60 B.R. 187 (Bankr. N.D.Ohio 1986).

■ "Congress expressed no intention that 707(b) should effect a non-debtor or that any non-debtor should be required to tighten his or her belt in order to assist the debtor in paying debts." *In re Atta- nasio,* 218 B.R. 180, 235 (Bankr.N.D.Ala. 1998). Nevertheless, "[i]n calculating whether there is discretionary income available . . . one must, of necessity, observe to what degree a debtor's daily living expenses are shared as co-obligations of the non-debtor spouse . . . ." *In re Staub,* 256 B.R. at 571. Consequently,

" . . . a court should assume that each party to a relationship, to the extent of his or her income, shares equally in paying the family living expenses and

the court should attribute at least one-half of the family living expenses to the debtor and the other half to the non-debtor spouse. The appropriate measure of the debtor's ability to pay for purposes of 707(b) would then be the debtor's sole income minus a one-half share of the family living expenses . . . ."

*In re Attanasio,* 218 B.R. at 234–235. *See also In re Saunders,* 60 B.R. at 188 (plan under which debtor paid all of the living expenses for he and his wife, even though she could afford to pay her share, effectively forced debtor's creditors to subsidize the wife's daily living expenses and was not confirmable) and *In re Reese,* 236 B.R. 371 (Bankr.N.D.Ohio 1999) (court should assume that a non-debtor spouse is paying a proportionate share of the parties joint household expenses, but is not required to consider the entirety of the non-debtor spouse's income in determining whether a debtor has sufficient income to fund a Chapter 13 plan.)

■ In this case the Debtor's net monthly income, $3,612.00 is substantially the same as that of his non-debtor spouse whose net monthly income is $3,663.00. Consequently, each party should share equally in paying the family's joint living expenses. Those expenses include the following:

| | |
|---|---|
| Rent | $1200.00 |
| Electricity and heating | 121.00 |
| Water and sewer | 55.00 |
| Telephone/Phone Cards | 68.00 |
| Garbage | 32.00 |
| Cable | 48.00 |
| Home maintenance | 25.00 |
| Food | 650.00 |
| Clothing | 95.00 |
| Laundry | 65.00 |
| Medical and dental | 220.00 |
| Transportation | 350.00 |
| Child care | 800.00 |
| Orthodontist | 125.00 |
| **Total of Joint Living Expenses** | **$3854.00** |

■ The debtor is responsible for payment $1,927.00, which constitutes one half of those expenses and that amount must be deducted from his net monthly income to determine his disposable income. In addition, the Debtor has the following individual expenses:

| | |
|---|---|
| Recreation | $140.00 |
| Charitable contribution | 40.00 |
| Music lessons | 65.00 |
| Golf lessons | 170.00 |
| Current taxes on Pension Income | 277.00 |
| **Total of Debtor's Individual Expenses** | **$692.00** |

■ However, I find that the expenses for golf and music lessons are not reasonably necessary to the support and maintenance of the Debtor or his dependents and should be deleted from the Debtor's budget. Consequently, his *individual* monthly expenses total $457.00 which should be added to his share of the joint household expenses for purposes of determining his disposable income. Accordingly, his total monthly expenses are $2,384.00 ($1,927.00 plus $457.00). After this amount is deducted from his net monthly income of $3,612.00, the debtor is left with a disposable income of $1,228.00 per month.

### 3. *Ability to Pay*

■ As noted by Judge Frank R. Alley in *In re Davenport,* Case No. 601–67522–fra7, April 25, 2002:

"Courts have rejected the 'percentage of payment' argument on the grounds that it rewards debtors with particularly high debts (and resulting low pay-outs), and, conversely, penalizes debtors whose debt load is relatively modest. *In re Praleikas,* 248 B.R. 140, 145 (Bankr. W.D.Mo.2000). In *Praleikas,* the debtor's position was that there was no substantial abuse because her disposable income would only permit payment of

$5,540.00, or 20% of her debt, through a chapter 13 plan. The court held that:

'Although a number of courts have taken into consideration the percentage of a debtor's debt that could be paid from future earnings, there is no bright line test. While it may be true that the higher the percentage of debt a debtor could pay with future earnings, the more likely it is that a court would find substantial abuse, the converse is not true. Otherwise debtors would be rewarded for having more debt, rather than less. Instead of percentage of debt, the determination of a debtor's ability to fund a chapter 13 plan is based on a consideration of the debtor's ability to make a substantial effort in repaying his or her debts.'

248 B.R. at 145 [Internal citations omitted]. The *Praleikas* court held that the debtor's ability to repay at least $5,540 would 'constitute a substantial effort to pay off her Debts [sic], and therefore, [found that she had] the ability to fund a Chapter 13 plan.' *Id.* It is the ability to make a substantial effort to pay, rather than the ability to pay a particular percentage of claims, which precludes the debtor from relief under Ch. 7."

Here, if the Debtor were to pay all of his disposable income into a Chapter 13 plan for a period of 36 months he would pay a total of $44,208.00. Assuming administrative costs of 10%, this would leave the Debtor with $39,787.20 with which to pay his creditors.

The Debtor has scheduled $5,473.00 in priority tax debt which would be paid in full from the Debtor's monthly plan payments, leaving a balance for general unsecured creditors of approximately $34,314.20. The Debtor's scheduled general unsecured debt totaled only $59,152.00. If the Debtor paid all of his disposable income into his plan for a period of 36 months that he could pay approximately 58% of his general unsecured debt.

Payments of over $34,000.00 towards unsecured debt for a total of approximately 58 percent would constitute a substantial effort and I find that the Debtor has the ability to fund a Chapter 13 plan.

## CONCLUSION

The Court finds that allowing the Debtor to proceed under Chapter 7 of the Code would be a substantial abuse of that chapter given his ability to pay $44,208.00 over three years toward payment of debts in a Chapter 13 plan. It follows that the Trustee's motion must be allowed.

While the conversion of the case to another Code chapter is not mandated, the debtor should not be denied the opportunity to do so if he wishes. The order allowing the UST's motion should provide that the case be dismissed 10 days of the date the order is docketed, unless prior to that time the Debtor files a motion seeking conversion of the case to another chapter.

This memorandum constitutes the findings of fact and conclusions of law required by Fed.R.Bankr.P. 7052. Counsel for the UST shall lodge a form of order consistent with the foregoing.