**In the Matter of Wilson TRAVIS, Debtor.**

**No. 06–43456–MBM.**

United States Bankruptcy Court, E.D. Michigan, Southern Division.

Nov. 6, 2006.

Robert E. Jones, Allen Park, MI, for Debtor.

## OPINION DENYING UNITED STATES TRUSTEE'S MOTION TO DISMISS

MARCI B. McIVOR, Bankruptcy Judge.

This matter came before the Court on the United States Trustee's Motion to Dismiss Debtor's Chapter 7 bankruptcy. The United States Trustee seeks to dismiss the case pursuant to 11 U.S.C. §§ 707(b)(2) and 707(b)(3).

A trial was held on September 25, 2006. At the conclusion of the trial, the Court took the United States Trustee's Motion to Dismiss under advisement. Based on the evidence the Court denies the United States Trustee's Motion to Dismiss under both §§ 707(b)(2) and (b)(3).

### *Findings of Fact*

(1) Debtor married in June, 1999.

(2) At the time Debtor married, his wife was the sole source of support for her mother and her teenage daughter.

(3) At the time Debtor and his wife were married, Debtor's spouse had substantial outstanding credit card debt.

(4) After Debtor and his wife married, the parties continued to accumulate substantial unsecured debt.

(5) Prior to filing for bankruptcy, Debtor sought credit counseling in an effort to restructure his debt, but Debtor continued to fall further behind every month, and ultimately filed for bankruptcy.

(6) On March 23, 2006, Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code.

(7) The Debtor's Amended Schedule I states: gross income $3,500; payroll taxes and social security—$980; insurance—$64; Debtor's net income is $2,456. Debtor's non-filing spouse's income is reflected on Schedule I as follows: gross income—$3,291; payroll taxes and social security—$921; insurance—$60; net monthly income—$2,310.

(8) Debtor's Statement of Current Monthly Income and Means Test Calculation (the "B–22 Form") states that a presumption of abuse does not arise. This statement is based on the following facts:

(A) Debtor's household contains five (5) family members.

(B) The marital adjustment on line 17 of the B–22 Form is $2,616.

(C) Debtor's current monthly income as stated on line 18 of the B–22 Form is $4,175.

(D) Debtor's total allowed deductions as stated on line 47 of the B–22 Form are $4,474.

(E) Debtor's sixty (60) month disposable income as stated by Debtor on line 51 of the B–22 Form is – $35,940.

(9) In addition to the taxes withheld from Debtor's spouse's paycheck, Debtor's spouse pays the following expenses (Trustee's Exhibit 4):

| | |
|---|---|
| Life insurance | $ 20.00 |
| Her credit cards | 300.00 |
| Gas | 220.00 |
| Insurance | 100.00 |
| Personal and sundry items | 200.00 |
| Clothing | 150.00 |
| Utilities | 120.00 |
| IRS | 100.00 |
| Food | 400.00 |
| Medical | 50.00 |

(10) Debtor's mother-in-law lives with Debtor and his spouse and is a dependent. She receives $450.00 in Social Security.

(11) Debtor's step-daughter lives with Debtor and his spouse and is a dependent. In addition, Debtor's step-daughter is unemployed and has a thirteen-month-old child. Immediately prior to the trial, Debtor's step-daughter had gone to a hospital to deliver her second child. Both of the step-daughter's children are also dependents of Debtor and his spouse.

(12) Debtor's Schedule F shows total unsecured debt of $29,000.23. The debt is consumer debt.

### Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(b)(2).

### Statement of Law

The United States Trustee ("UST") seeks dismissal of Debtor's Chapter 7 bankruptcy proceeding pursuant to 11 U.S.C. § 707(b)(2)(A). Section 707(b)(2)(A) provides:

(i) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter, the court shall presume abuse exists if the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv), and multiplied by 60 is not less than the lesser of—

(I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $6,000, whichever is greater; or

(II) $10,000.

At trial the UST took issue with the Debtor's calculations on the B–22 Form, arguing that had Debtor completed the form correctly, a presumption of abuse arises. The UST's primary disagreement with Debtor arises out of line 17 of the B–22 form. Line 17 of the B–22 form states: "If you checked the box at line 2c, (married not filing jointly), enter the amount of the income listed in Line 11, Column B that was NOT regularly contributed to the household expenses of the debtor or debtor's dependents." On Line 17, Debtor entered the figure of $2,616. The UST disputes that this figure is a correct calculation for the marital adjustment. The UST argues: (1) that Debtor's spouse cannot include in this figure any amounts for food, utilities, clothing and personal items because those expenses are already accounted for on the B–22 Form when Debtor calculated his deductions for food, clothing, utilities, housing and personal items (lines 19, 20A, 20B and 21) based on a household consisting of five (5) members. Since Debtor calculated his food, housing, utilities and miscellaneous expenses based on five (5) family members, the UST argues it would be double dipping to allow Debtor's non-filing spouse to also deduct her contribution to the expenses as a marital adjustment. The non-filing spouse claimed food, clothing, utility and personal expenses in the amount of $870. The UST argued that those amounts should not have been included in the marital adjustment, thereby reducing

the marital adjustment from $2,616 to $1,746. In addition, the UST argued that the marital adjustment claimed by the Debtor already included the amount she withholds for taxes, and therefore, the additional $100 of IRS expense claimed by the non-filing spouse should not be included in the marital adjustment. This further reduces the marital adjustment to $1,646. (At trial, the UST argued that after disallowing the above amounts, the correct marital adjustment should be $1,661. The Court cannot discern from the record how the UST arrived at $1,661 rather than $1,646, however, the difference is small enough to have no impact on the UST's argument with regard to the B–22 Form and will be ignored by the Court.)

The UST also objected to several of the other deductions and expenses taken by the Debtor on his B–22 Form. Specifically, the UST argued that the Debtor's Line 32 telecommunications services expense should be reduced from $160 to $130; that his Line 35 deduction regarding continued contribution to the care of household family members should be reduced by $100, given that Debtor's testimony at his § 341

meeting that this amount was used for his own expenses; and elimination of the Line 39 expense of $52 for additional food and clothing expenses given Debtor's testimony at the § 341 hearing that $52 is the amount he spends on lunches out. (Transcript p. 17)

At trial, the Debtor argued that his non-filing spouse had extraordinary expenses as a result of caring for her mother, her grown daughter and grandchildren, and that the marital adjustment of $2,616 is justified by these extraordinary expenses. Debtor also testified that his wife's income is not as stable as shown on Schedule I, due to unpaid leave taken under the Family Medical Leave Act. Debtor also testified that his non-filing spouse paid property taxes of $250 a month in addition to the other expenses she paid and listed on Exhibit 4. The Debtor argued that the means test as filed is correctly calculated, leaving him with insufficient income to give rise to a presumption of abuse.

The following chart compares the Debtor's filed B–22 Form with the B–22 Form as proposed by the UST:

| Chapter 7 Statement of Current Monthly Income as Calculated by the Debtor and UST | | |
|---|---|---|
| | Debtor's B–22 Form | UST's Proposed B–22 Form |
| Line 3 (gross wages) | Debtor's Income $3,500 Non–Filing Spouse Income $3,291 | Debtor's Income $3,500 Non–Filing Spouse Income $3,291 |
| Line 17 (marital adjustment) | $2,616 | $1,661 |
| Line 18 (current monthly income) | $4,175 | $5,130 |
| Line 32 (telecommunication services) | $160 | $130 |
| Line 35 (contributions to care | $100 | $ 0 |

of household members)

| | no presumption of abuse | presumption of abuse |
|---|---|---|
| Line 39 (additional food and clothing expense) | $52 | $ 0 |
| Line 47 (total expense deductions) | $4,774 | $4,592 |
| Line 48 (monthly income) | $4,175 | $5,130 |
| Line 50 (monthly disposable income under § 707(b)(2)) | -$599 | $538 |
| Line 51 (60 month disposable income) | -$35,940 | $32,280 |

Using the UST's recalculated B–22 Form, the UST argues that Debtor's case must be dismissed pursuant to 11 U.S.C. § 707(b)(2)(A) because Debtor's current monthly income less allowed deductions, multiplied by 60, exceeds $10,000, the threshold amount above which abuse is presumed.

As a preliminarily matter, the Court notes that the calculation of current monthly income when there is a non-filing spouse is complicated. The requirements which the Code imposes on a non-filing spouse in reference to the non-filing spouse's income are not clearly defined

and are subject to interpretation. Specifically, the Code defines "current monthly income" as follows:

§ 101(10A) The term "current monthly income"—

(A) means the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income . . .

On first reading, 11 U.S.C. § 101(10A)(A) [1] , it appears that a spouse's income is relevant only in a joint case.[2]

1. The Court notes that it is unwieldy to cite a code section as 11 U.S.C. § 101(10A)(A). As many courts have pointed out, BAPCPA has more than its share of drafting errors, and this odd numbering scheme is one of them.

2. One court has already opined on this issue. In *In re Welch,* 347 B.R. 247 (Bankr. W.D.Mich.2006), the Court denied the UST's motion to dismiss on the grounds of substantial abuse under 11 U.S.C. § 707(b) of the prior act. The court ruled that on the specific facts of that case, the income of the debtor's non-filing spouse could not be included in debtor's income in determining whether debtor's case should be dismissed on grounds of

substantial abuse. The case was decided on August 4, 2006, prior to the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. However, the court noted in footnote 14:

I also note that the recent BAPCPA amendments to § 707 are consistent with my conclusion that a non-filing spouse's income is not to be included in determining whether the debtor's petition is abusive. For example, only the debtor's income is to be included in determining whether the § 707(b)(2) presumption applies unless the debtor and his spouse filing jointly. 11 U.S.C. § 101(10A). Similarly, the spouse's

However, this reading of 11 U.S.C. § 101(10A)(A), does not address the language in 11 U.S.C. § 101(10A)(B) that states:

The term "current monthly income"—

(B) includes any amount paid by any entity other than the debtor (or in a joint case the debtor and the debtor's spouse), on a regular basis for the household expenses of the debtor or the debtor's dependents (and in a joint case the debtor's spouse if not otherwise a dependent), but excludes benefits received under the Social Security Act ...

Thus, while 11 U.S.C. § 101(10A)(A) excludes a non-filing spouse's income, a non-filing spouse's income must be accounted for under 11 U.S.C. § 101(10A)(B) to the extent that the non-filing spouse contributes on a regular basis to the household expenses of the debtor and the debtor's dependents.

This definitional section is incorporated into the B–22 Form by requiring the non-filing spouse to state his/her income, and then allowing the non-filing spouse to subtract the amount the non-filing spouse does not pay on a regular basis for the household expenses of the debtor or the debtor's dependents.

A determination of the amount paid by a non-filing spouse on a regular basis for household expenses of the debtor or the debtor's dependents is necessarily fact specific and subject to interpretation. For example, if the non-filing spouse has substantial income and chooses to spend that income on an expensive home, or a vacation home, or a luxury vehicle that is driven by the debtor and the non-filing spouse, are payments on those items "household

expenses" of the debtor? To the extent that a non-filing spouse's income is deemed to be a contribution to the debtor's household expenses, it will raise the debtor's current monthly income and increase the likelihood that the presumption of abuse will arise.

■ This Court is not passing judgment on the manner in which BAPCPA deals with the income of the non-filing spouse. The issue of how to account for a non-filing spouse's income has plagued courts long before the enactment of BAPCPA. In Chapter 13 cases, the issue arises under 11 U.S.C. § 1325(b)(1) which requires a determination of the debtor's available disposable income. *See In re Sellers,* 33 B.R. 854 (Bankr.D.Col.1983); *Matter of Saunders,* 60 B.R. 187 (Bankr.N.D.Ohio 1986); *In re Williamson,* 296 B.R. 760 (Bankr. N.D.Ill.2003). In the context of Chapter 7 cases, the non-filing spouse's income has generally been considered in conjunction with a § 707 substantial abuse motion filed by the United States Trustee. *See In re Welch,* 347 B.R. 247 (Bankr.W.D.Mich. 2006); *In re Duncan,* 201 B.R. 889 (Bankr. W.D.Pa.1996); *In re Falke,* 284 B.R. 133 (Bankr.D.Or.2002); *In re Staub,* 256 B.R. 567 (Bankr.M.D.Pa.2000). The Court is simply noting that because of the impact of the Line 17 marital adjustment calculation on a debtor's ability to remain in bankruptcy, courts have an obligation to scrutinize challenges to Line 17 very carefully.

■ In the instant case, the Court agrees with the UST that some of the expenses claimed by debtor's non-filing spouse as her own expenses are either counted twice or are a contribution to the

needs are not to be included in the calculation of the debtor's expenses for purposes of the § 707(b)(2) presumption unless the spouse is in fact a dependent or the spouse joined in the debtor's petition. 11 U.S.C.

§ 707(b)(2)(A)(2)(I). Indeed, it is only in determining who may file a § 707(b) motion and when the § 707(b)(2) presumption may be used that the non-filing spouse's income is to be considered.

household expenses of the debtor and debtor's dependents, and therefore, cannot be included in the Line 17 marital adjustment. Specifically, the Court agrees that to the extent the non-filing spouse contributes income for food and utilities, these are clearly contributions to the household expenses of the debtor and the debtor's dependents. Since the debtor's non-filing spouse claims that she spends $520 on these expenses, these expenses are properly excluded from Line 17 of the B–22 Form. In addition, the $100 deduction included by the non-filing spouse as an expense for taxes is already accounted for when the non-filing spouse included her payroll taxes and Social Security as part of the marital adjustment.

■ However, contrary to the argument of the UST that the non-filing spouse's expenses for clothing and personal items must be excluded from the marital adjustment, the Court finds it appropriate, on the facts of this case, for the non-filing spouse to take a marital adjustment for these items. The UST argues that the Debtor's expenses were calculated based on a household of five (5) family members, and that he ought not to be able to reduce his current monthly income by allowing his non-filing spouse to subtract additional amounts for food, clothing, utilities and personal items. The Court disagrees. The amount of the debtor's deductions for food, clothing, utilities and personal items is determined by local and national standards based on the number of members in the household. The Debtor is allowed the same deductions regardless of whether the Debtor files with his spouse as a joint debtor, or files without his spouse, and regardless of whether a spouse is a dependent. In this case, the Debtor correctly stated his household as containing five members and he is entitled to take the national and local standard deductions for a family of five.

■ The B–22 Form, however, distinguishes between the expenses of the debtor and the expenses of the non-filing spouse which can be deducted prior to the calculation of debtor's current monthly income. The debtor's expenses are fixed by the IRS national standards for allowable living expenses and the IRS local standards for housing and utility payments. By contrast, the non-filing spouse's expenses on Line 17 are not a fixed amount; they are defined as the expenses not contributed to the household expenses of the debtor and the debtor's dependents. If the non-filing spouse spends his/her income on his/her own expenses, those are legitimate deductions on Line 17, regardless of whether those expenses could also be generally categorized as household expenses. The non-filing spouse is entitled to include in the marital adjustment expenses for his/her clothing and other personal items, even if some of those personal items are purchased for debtor's dependents. If the non-filing spouse chooses to spend his/her income on purchasing a small number of extra personal items or clothing for family members other than the debtor (after all, they are his/her dependents as well), the non-filing spouse may include them as part of the marital adjustment, provided they are reasonable.

In this case, the Debtor claims that he spends $150 per month on clothing and $200 per month on personal and sundry items. The UST introduced no evidence to support an argument that these sums were contributed for the support of the Debtor and his dependents. If the non-filing spouse chooses to spend those amounts on her own clothing and extra items for the family, those are not amounts paid on a regular basis for the household

528

expenses of the Debtor or the Debtor's dependents.

With regards to the UST's objection to Lines 32, 35 and 39, the Court agrees with the position of the UST based on Debtor's testimony. Debtor's testimony supports the disallowance of $30 of the telecommunications expense and all the expenses on Lines 35 and 39. However, the Court also finds that Debtor substantially understated his taxes on Line 25 of the B–22 Form. In response to the UST's questions at trial, the Debtor agreed that $921, as stated on Schedule I as the amount deducted from his non-filing spouse's income for payroll taxes and Social Security, and $980 deducted from his income for taxes and Social Security, are "in line" with what Debtor and his spouse pay for taxes and Social Security. (Transcript at 13–15). However, on Line 25 of the B–22 Form, which requires the Debtor to enter the "total average monthly expenses that you actually incur for all federal, state and local taxes", the Debtor stated only $550. There is no explanation as to why this number is placed on the B–22 Form. Based on Schedule I and the Debtor's testimony with regard to his and his wife's actual tax liability, the Court finds that the correct figure on Line 25 is $980.

The Court's conclusions as to the law based on the facts of this case are set forth as follows:

| Chapter 7 Statement of Current Monthly Expenses | | | |
|---|---|---|---|
| | Debtor's B–22 Form | UST's Proposed B–22 Form | Court's Corrected B–22 Form |
| Line 3 (gross wages) | Debtor's Income $3,500 Non–Filing Spouse Income $3,291 | Debtor's Income $3,500 Non–Filing Spouse Income $3,291 | Debtor's Income $3,500 Non–Filing Spouse Income $3,291 |
| Line 17 (marital adjustment) | $2,616 | $1,661 | $2,021 |
| Line 18 (current monthly income) | $4,175 | $5,130 | $4,770 |
| Line 25 (other necessary expenses: taxes) | $550 | $550 | $980 |
| Line 32 (telecommunication services) | $160 | $130 | $130 |
| Line 35 (contributions to care of household members) | $100 | $ 0 | $ 0 |
| Line 39 (additional food and clothing expense) | $52 | $ 0 | $ 0 |
| Line 47 (total expense deductions) | $4,774 | $4,592 | $5,022 |

| | | | |
| --- | --- | --- | --- |
| Line 48 (monthly income) | $4,175 | $5,130 | $4,770 |
| Line 50 (monthly disposable income under § 707(b)(2)) | -$599 | $538 | -$252 |
| Line 51 (60 month disposable income) | -$35,940 | $32,280 | -$15,120 |
| | no presumption of abuse | presumption of abuse | no presumption of abuse |

 The B–22 Form as calculated based on the Court's ruling results in a negative sixty (60) month disposable income under § 707(b)(2). Since the Debtor has negative income, there is no presumption of abuse in this case under 11 U.S.C. § 707(b)(2).

### 11 U.S.C. § 707(b)(3)

The UST also seeks to dismiss Debtor's case pursuant to 11 U.S.C. § 707(b)(3). Section § 707(b)(3) states in relevant part:

In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in which the presumption in subparagraph (A)(i) of such paragraph does not arise or is rebutted, the court shall consider—

(A) whether the debtor filed the petition in bad faith; or

(B) the totality of the circumstances (including whether the debtors seeks to reject a personal services contract and the financial need for such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse.

11 U.S.C. § 707(b)(3) replaces 11 U.S.C. § 707(b) of the Bankruptcy Reform Act of 1994. 11 U.S.C. § 707(b) reads:

After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor.

 The initial issue before the Court is what standard the Court should use in analyzing abuse under 11 U.S.C. § 707(b)(3). There is a substantial body of law in Sixth Circuit setting out the standard for analyzing "substantial abuse" under 11 U.S.C. § 707(b). The pre-BAPCPA cases required the court to look at the totality of the debtor's circumstances and look at the debtor's motives for filing. While the prior act refers to "substantial abuse" and the new act refers to "abuse", the language change is a distinction without a difference for purposes of analyzing whether granting relief to the debtor would be an abuse of the bankruptcy system. The Court, therefore, finds that the standard for analyzing abuse under 11 U.S.C. § 707(b) is equally applicable to cases filed under 11 U.S.C. § 707(b)(3).

Prior to the enactment of the BAPCPA, the controlling law in the Sixth Circuit on 11 U.S.C. § 707(b) was *In re Krohn*, 886 F.2d 123 (6th Cir.1989). See also, *In re Behlke*, 358 F.3d 429 (6th Cir.2004). *Krohn* held that in determining whether to

dismiss a case under § 707(b), the Court must look to the totality of the circumstances. *Krohn,* 886 F.2d at 126. The court also held that there are two independent grounds on which to dismiss a debtor's case under § 707(b): (1) the debtor has acted dishonestly; or (2) where the debtor is not needy; that is, his financial situation does not warrant a discharge in exchange for the liquidation of his assets.

In this case, the UST raised no issue with regard to the Debtor's honesty or good faith. However, the UST argues that the Debtor does have an ability to pay his debts out of future earnings and could fund a hypothetical chapter 13 plan. In part, the UST based his argument on the recalculation of the Means Test Form. However, since the Court has rejected the recalculation by the UST, the Court finds no monthly disposable income on Line 50 that would be available for distribution to unsecured creditors.

■ The Court must then look at the totality of circumstances to determine whether Debtor's bankruptcy filing is an abuse of the system under 11 U.S.C. § 707(b)(3). In *In re Krohn, supra,* the Court listed the following factors to be considered by the Court in determining whether the debtor was sufficiently needy to avail himself of a Chapter 7 bankruptcy: (1) whether the debtor enjoys a stable source of income; (2) whether he is eligible for adjustment of his debts through Chapter 13; (3) whether there are state remedies with the potential to ease financial problems; (4) the degree of relief obtainable through private negotiations; and (5) whether his expenses can be reduced significantly without depriving him of adequate food, clothing, shelter and other necessities. *Krohn,* 886 F.2d at 126–127.

The UST did not directly address any of these facts, but rather argued that if the non-filing spouse's available income was taken into consideration as shown on Debtor's Schedule I, Debtor had sufficient income to fund a chapter 13 plan. The UST specifically objects to the non-filing spouse continuing to allocate $300 on her own credit card debt, which Debtor's consumer debt (if the case is not dismissed or converted) will be discharged at the conclusion of the Chapter 7 bankruptcy proceeding.

This Court agrees with the UST that Debtor's non-filing spouse's income and expenses are relevant in a § 707(b) motion against a debtor. *See, In re Welch,* 347 B.R. 247 (Bankr.W.D.Mich.2006), *In re Duncan,* 201 B.R. 889 (Bankr.W.D.Penn. 1996); *In re Rysso,* 321 B.R. 522 (Bankr. D.Minn.2005); *In re Falke,* 284 B.R. 133 (Bankr.D.Or.2002). This conclusion leads to two questions: first, how much consideration does the Court give to the non-filing spouse's income and, second, even if all of the non-filing spouse's income is available to the Debtor, is there an ability to commit any of that income to repayment of unsecured creditors?

■ The Court finds that the non-filing spouse's income should be considered only if his/her income is substantial enough to significantly raise the debtor's standard of living and generate total household income in excess of the reasonable costs of food, clothing, shelter and other necessities. In the instant case, the non-filing spouse's net monthly income is $2,310.[3] The non-filing spouse uses this income to pay her own expenses: taxes, insurance, gas and her own credit card debt, and uses the balance to pay for food ($400), utilities ($120),

---

**3.** Based on the Debtor's testimony, this figure is actually higher than the spouse's actual income. Debtor testified that his spouse takes

unpaid leave under the Family Medical Leave Act to care for her mother, who suffers from kidney failure.

clothing ($150) and miscellaneous personal items ($200). The Debtor's net taxable income is $2,456. He uses his income to pay the mortgage payment ($1,107), his car payment ($277), gas ($90), utilities, telephone and cable ($255) and a small portion of the food budget ($200) and clothing ($35). The Court finds that in this case, the non-filing spouse's income does not enable Debtor to significantly improve his standard of living; it simply makes possible the Debtor's ability to provide adequate food, clothing, shelter and other necessities for Debtor and his dependents. Under these facts, the Court finds no reason to take into consideration the non-filing spouse's income in determining whether the Debtor is committing abuse of the bankruptcy system.

█ Even if the Court were to consider the non-filing spouse's income, the Court concludes there is no available income to pay to unsecured creditors. The Debtor's testimony indicated he and his wife split the bills, and at the end of the month, there is no money. Debtor's testimony was entirely credible. The Debtor and his non-filing spouse's expenses are reasonable. The only possible belt tightening is the $300 a month Debtor's non-filing spouse pays on her own credit card debt. Debtor has not abused the Code by failing to require his non-filing spouse to fund repayment of his obligations. The non-filing spouse is choosing to use her income to pay her unsecured creditors in full, she is not using her income to fund an extravagant lifestyle for her and the Debtor. If the Debtor's non-filing spouse's extra income was funding a vacation home or an expensive car for the Debtor, the Court could reach a different conclusion. In this case every dime of the non-filing spouse's income is committed to legitimate expenses of her own or household expenses of her and her dependents. In contrast,

see *In re Staub*, 256 B.R. 567 (Bankr. M.D.Penn.2000)(the Chapter 7 debtor's case was dismissed where debtor had little income but non-filing spouse earned $16,000 a month).

This case presents additional facts which weigh against a finding of abuse. The Debtor testified that his inability to pay his debts has come about primarily as a result of his marriage in 1999. At that time, Debtor's non-filing spouse was the sole source of support for her mother and her daughter. The unanticipated expenses of these additional dependents caused Debtor and his non-filing spouse to use their credit cards for routine expenses. This pattern has continued and Debtor's financial situation has worsened, as his unemployed step-daughter has two children who are also dependent on the Debtor and his non-filing spouse for support. The Court finds that the Debtor's unsecured debt arose not out of an extravagant lifestyle, but rather out of the financial assistance he has provided to his mother-in-law, step-daughter and step-grandchildren. Based on the totality of the circumstances, the Court finds that the Debtor is in need of bankruptcy relief and there are no grounds for dismissal under 11 U.S.C. § 707(b)(3).

### *Conclusion*

For the reasons set forth above, the Court denies the UST's Motion to Dismiss pursuant to 11 U.S.C. §§ 707(b)(2) and 707(b)(3).