Original
No. LD-2011-006

CLARK'S CASE

Argued: November 10, 2011
Opinion Issued: January 13, 2012

*James L. Kruse*, of Concord, on the brief and orally, for the professional conduct committee.

*Upton & Hatfield, LLP*, of Portsmouth (*Russell F. Hilliard* on the brief and orally), for the respondent.

LYNN, J. On May 12, 2011, the Supreme Court Professional Conduct Committee (PCC) filed a petition recommending disbarment of the respondent, Grenville Clark, III. We order the respondent disbarred.

## I

The record supports the following undisputed facts. In September 2008, Heidi Gaudreau hired the respondent, an attorney licensed in New Hampshire since 1971, to help her file for bankruptcy protection under Chapter 13 of the United States Bankruptcy Code. This chapter of the Code allows individuals to reorganize their finances and repay creditors over time. Gaudreau had recently married and insisted that her husband and his income not be involved in the bankruptcy petition. The respondent, thus aware of his client's husband and income, prepared the necessary documents and submitted them to the bankruptcy court. One of those documents is Schedule I, "Current Monthly Income of Individual Debtor(s)," which calls for the preparer to supply the debtor's monthly income in one column and the debtor's spouse's monthly income in the other column. At the top of that document, the form states: "The column labeled

'Spouse' must be completed in all cases . . . by every married debtor, whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed." The respondent nevertheless entered zeroes in the spousal income column. On the line reserved for "other monthly income" of the debtor, the respondent entered "$2,195.00" in the appropriate field and wrote "contributions from spouse" on the corresponding line.

Another document filed by the respondent with Gaudreau's petition was the "Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income." On that form, the respondent also entered zeroes in the column designated for the debtor's spouse's income except on line 7, where he entered $365.83 in the spousal income column for "Any amounts paid by another person . . . on a regular basis, for household expenses of the debtor." The next page of that form allows the filer to enter a "marital adjustment" if "calculation of the commitment period . . . does not require inclusion of the [spouse's] income" because such income was not paid on a regular basis for the debtor's household expenses. That adjustment would have allowed Gaudreau to ask the court to subtract the amount of her husband's income not being used for her household expenses from its calculation of the total amount of disposable income in the debtor's household. The respondent entered zeroes in the marital adjustment fields. He filed Gaudreau's bankruptcy petition along with these and other forms in September and October 2008.

After a hearing in November 2008, the bankruptcy trustee recommended against confirming Gaudreau's Chapter 13 plan in part because she had not established her disposable income. She then converted her case to a Chapter 7 bankruptcy, but the trustee in that case moved to dismiss based, in part, upon Gaudreau's failure to disclose her husband's income. In June 2009, after the respondent's representation of Gaudreau had terminated, she withdrew her bankruptcy petition, and the bankruptcy court accepted her withdrawal and dismissed the case.

Based upon the respondent's representation of Gaudreau in her bankruptcy case, the PCC petitioned this court to disbar the respondent based on its conclusion that he knowingly made a false statement of fact or law to a tribunal in violation of Rule 3.3(a)(1) of the New Hampshire Rules of Professional Conduct. The respondent is currently subject to a separate two-year suspension from the practice of law.

## II

The PCC's findings of violations of the Conduct Rules must be supported by clear and convincing evidence. SUP. CT. R. 37A(III)(d)(2)(C). In attorney discipline matters, we defer to the PCC's factual findings if supported by the record, but retain ultimate authority to determine whether, on the facts

found, a violation of the rules governing attorney conduct has occurred and, if so, what the sanction should be. *Young's Case*, 154 N.H. 359, 366 (2006).

The respondent argues that the PCC lacked clear and convincing evidence that he knowingly made a false statement of fact to the bankruptcy court, in violation of Rule 3.3(a)(1), when he entered zeroes in the columns on the two forms instructing filers to enter the amount of the debtor's spouse's income. He contends that he did not knowingly violate the rule in part because bankruptcy law is unsettled on the issue of what effect spousal income has in a bankruptcy case and in part because he reported his client's spouse's income — as "contributions from spouse" — elsewhere on the forms and in the filing.

The Code sets forth in 11 U.S.C. § 1322 (2006) the general contents of a Chapter 13 plan. A Chapter 13 plan allows for partial payments to creditors over certain "commitment periods" of three to five years. *See* 11 U.S.C. § 1322(d)(1), (2). The length of a commitment period is determined by whether "the current monthly income of the debtor and the debtor's spouse combined" is above or below a specified level. *Id.* Thus, to correctly determine the "commitment period," a debtor is required to disclose her and her spouse's income. Accordingly, both the Schedule I form and the Chapter 13 Statement of Current Monthly Income form include one column in which filers must enter the debtor's income, and a second column in which filers must enter the debtor's spouse's income.

With this background in mind, we conclude that clear and convincing evidence supported the PCC's determination that the respondent knowingly made false statements to the bankruptcy court in violation of Rule 3.3(a)(1). The bankruptcy court in a Chapter 13 case uses the Schedule I form as a starting point to determine a petitioner's eligibility for bankruptcy protection and to select an appropriate plan and commitment period. *See* 11 U.S.C. § 101(10A)(A)(i) (2006); 11 U.S.C. § 1325(b)(4)(ii) (2006); *In re Lanning*, 545 F.3d 1269, 1282 (10th Cir. 2008), *aff'd sub nom. Hamilton v. Lanning*, 130 S. Ct. 2464 (2010). As is clear from the statute, bankruptcy courts use spousal income to determine whether, and under what circumstances, the debtor is entitled to enter a repayment plan. *See* 11 U.S.C. § 1325(b)(4)(ii).

The respondent argues that because the calculation of spousal income for the purposes of a bankruptcy case is "not entirely clear," and because he provided hints of Gaudreau's husband's income elsewhere on the form (*i.e.*, listing $2195 as "contributions from spouse" on Schedule I and $365.83 as spousal income from other sources on the Chapter 13 Statement of Current Monthly Income), he did not knowingly provide a false statement to the tribunal.

■ The respondent cites two cases in support of his contention that the law regarding *disclosure* of a non-filing spouse's income is uncertain. Neither is persuasive of this proposition. In *In re Travis*, 353 B.R. 520 (Bankr. E.D. Mich. 2006), the court merely observed that "the *calculation* of current monthly income when there is a non-filing spouse is complicated." *Id.* at 525 (emphasis added). In fact, in *Travis*, the debtor fully disclosed his spouse's income; the dispute was limited to the proper mode of calculating her income for the purpose of identifying whether a presumption of abuse arose in a Chapter 7 case under 11 U.S.C. § 707(b). In *In re Boatright*, 414 B.R. 526, 530-31 (Bankr. W.D. Mo. 2009), the court discussed the fact that a non-debtor spouse's "Current Monthly Income" (CMI) could potentially be captured under the definition of CMI contained within either 11 U.S.C. § 101(10A)(A) or 11 U.S.C. § 101(10A)(B), and concluded that the latter was the more appropriate vehicle for doing so. As in *Travis*, the issue in *Boatright* was to what extent a non-debtor spouse's income should be considered in determining whether a bankruptcy filing is abusive under 11 U.S.C. § 707(b). Notably, the court in *Boatright* stated at the outset of its opinion: "Courts widely agree that a non-debtor spouse's income should be considered in determining whether a debtor's bankruptcy filing should be dismissed as abusive under 11 U.S.C. § 707(b)." *Id.* at 528. While we might agree with the respondent that *Boatright* offers support for the proposition that only the non-filing spouse's contributions to the debtor's household expenses, rather than his gross income, is included within CMI, neither that case nor *Travis* suggests that something less than full *disclosure* of the non-filing spouse's income is permitted. Indeed, the "marital adjustment" section of the Statement of Current Monthly Income form is specifically designed to allow a debtor, *after making full disclosure of her spouse's income*, to explain why some or all of that income should not be considered because it was not available for the payment of the debtor's household expenses.

■ Whether and how the court could *consider* Gaudreau's husband's income in determining her bankruptcy eligibility and plan has no bearing on whether the respondent knowingly made a false statement of fact to the court. The very first instruction on Schedule I states: "The column labeled 'Spouse' must be completed in all cases . . . by every married debtor, whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed." Thus, the column designated for spousal income was equivalent to the court asking the respondent, "What is your client's spouse's income?"[1] By placing zeroes in that column when he knew

---

[1] Insofar as respondent argues that the official bankruptcy forms are inconsistent with the Code in calling for the disclosure of more information than the Code requires, the appropriate

Gaudreau's husband had income, the respondent made a false statement of fact to the tribunal, in effect telling the court that Gaudreau's husband had no income when in fact he did; thus, he violated Rule 3.3(a)(1).[2] To the extent that he listed *some* of Gaudreau's husband's income as "contributions from spouse" on Schedule I under the column designated for Gaudreau's income (line 13 — "other monthly income"), the court could have interpreted such information to mean that the debtor had a spouse who made contributions to the debtor, but had no income. Similarly, although he listed $365.83 on the Statement of Current Monthly Income as the spouse's income, in reality Gaudreau's husband had significantly more income, the exact amount of which the court needed to know in order to dispose of Gaudreau's bankruptcy petition accurately and in line with the relevant statutory requirements. On the record before us, we are satisfied that the PCC could properly find by clear and convincing evidence that the respondent furnished the bankruptcy court with information he knew to be false.

## III

■ Having concluded that the respondent violated Rule 3.3(a)(1), we now identify the applicable sanction. *Wolterbeek's Case*, 152 N.H. 710, 714 (2005). As noted above, we retain the ultimate authority to determine the sanction for a violation of the rules. *Young's Case*, 154 N.H. at 366. In determining a sanction, we are mindful that the purpose of attorney discipline is not to inflict punishment, but rather "to protect the public, maintain public confidence in the bar, preserve the integrity of the legal profession, and prevent similar conduct in the future." *Richmond's Case*, 152 N.H. 155, 159-60 (2005) (quotation omitted). We judge each attorney discipline case on its own facts and circumstances, taking into account the severity of the misconduct and any mitigating circumstances appearing in the record. *Id.* at 160. "The gravity of unprofessional conduct is not

---

manner of raising such a challenge to the forms would have been through the filing of an appropriate motion in the bankruptcy court, not by supplying false information on the forms.

[2] The respondent's contention that his software did not allow him to explain, within the four corners of the form, the reasons for his entry of the spouse's income in the column designated for the *debtor's* income is without merit. If the respondent wanted to make a good faith legal argument, based on the mixed case law in other bankruptcy courts, that the court should not consider the spouse's actual income (rather than the amount of his income contributed to Gaudreau's household expenses), he could have made such a contention in a separately-written document including the spouse's actual income and explaining his reasoning for entering zeroes in the pertinent columns on the forms themselves. In that case, he would have disclosed that the spouse *had* a certain amount of income, thereby equipping the court to make further inquiry into the matter. Without having given the court any indication of the spouse's actual income, however, the respondent's act of placing zeroes in the column asking filers to provide the spouse's income constituted a false statement.

determined solely by the number of rules broken or by the particular rules violated, but is determined largely with reference to the attorney's behavior." *Morgan's Case*, 143 N.H. 475, 477 (1999) (quotation omitted).

■ We look to the American Bar Association's STANDARDS FOR IMPOSING LAWYER SANCTIONS (1992) (STANDARDS) for guidance. *Wolterbeek's Case*, 152 N.H. at 714. The STANDARDS list the following factors for consideration in imposing sanctions: (a) the duty violated; (b) the lawyer's mental state; (c) the potential or actual injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors. STANDARDS § 3.0; *Wolterbeek's Case*, 152 N.H. at 714. The first three factors are used as an aid in categorizing the attorney's misconduct and identifying a baseline sanction. *Grew's Case*, 156 N.H. 361, 365 (2007). We then consider the effect, if any, of aggravating or mitigating factors in arriving at the ultimate sanction. *Id.*

■ First, the respondent violated one of the most important duties of lawyers in our legal system — that of candor to a tribunal. "The confidence of judges to rely with certainty upon the word of attorneys forms the very bedrock of our judicial system." *Kalil's Case*, 146 N.H. 466, 467 (2001) (quotation omitted). The oath of admission to the New Hampshire bar reflects this important duty, requiring new lawyers to swear to "do no falsehood, nor consent that any be done in the court." RSA 311:6 (2005). Second, at the very least, the respondent presented false information to the bankruptcy court knowingly: it is undisputed that he knew Gaudreau had an income-earning husband, and at the hearing before the PCC, he explained that his motivation in the proceeding was to help carry out Gaudreau's wish to avoid involving her husband's income in her case. While pursuing a client's wishes forcefully is normally a laudable quality in an attorney, doing so in a manner that violates the rules of professional conduct and misleads courts is intolerable in the legal profession; as an experienced attorney, the respondent should have known as much. Third, the respondent's misconduct both caused injury to Gaudreau and had the potential to adversely affect her interests and the integrity of the bankruptcy proceedings. *See* STANDARDS § 6.11. Gaudreau, a woman of modest means suffering financial difficulties, paid the respondent $2000 to represent her; due to his misconduct, arising from an erroneous belief that providing false information to the bankruptcy court as to Gaudreau's husband's income would allow her to qualify for Chapter 13 relief, she endured unnecessary expense and additional hardship. She also suffered potential exposure to criminal charges for filing a bankruptcy form containing false information about her husband's income. And there can be no doubt the integrity of the bankruptcy court suffered. Had the court

accepted as true that the debtor's spouse had little or no income, its decision in the case would have been predicated on a falsehood.

 The seriousness of the respondent's behavior is further apparent in the STANDARDS:

> Disbarment is generally appropriate when a lawyer, with the intent to deceive the court, makes a false statement, submits a false document, or improperly withholds material information, and causes serious or potentially serious injury to a party, or causes a significant or potentially significant adverse effect on the legal proceeding.

STANDARDS § 6.11. As we have stated before, "The privilege of practicing law does not come without the concomitant responsibility of truth, candor and honesty. Because no single transgression reflects more negatively on the legal profession than a lie, attorney misconduct involving dishonesty justifies disbarment." *Young's Case*, 154 N.H. at 369 (quotation omitted). Given the absence of mitigating factors and the respondent's disciplinary history and substantial experience in the practice of law, we agree with the PCC's recommendation and order the respondent disbarred. We further order the respondent to reimburse the attorney discipline system for all expenses incurred in the investigation and enforcement of discipline in this case. SUP. CT. R. 37(19).

*So ordered.*

DALIANIS, C.J., and DUGGAN and HICKS, JJ., concurred.